22 U.S. 502 (1824)
9 Wheat. 502
STEPHENS, Appellant,
v.
M'CARGO and others, Respondents.
Supreme Court of United States.
March 16, 1824.
Mr. Chief Justice MARSHALL delivered the opinion of the Court.
This is an appeal from a decree pronounced by the Circuit Court of the United States for the District of Kentucky, directing the appellant to convey to the respondents certain lands mentioned in their bill, and claimed by them under two distinct titles.
The board of commissioners granted a certificate of pre-emption on the 26th day of April, 1780, to Benjamin Harrison, for 1000 acres of land, which certificate contained, within itself, a good location.
The entry with the surveyor was made on the 5th day of June, 1786; the land was surveyed on *503 the 12th of December, 1787; and the grant was issued on the 10th of February, 1789.
The complainants deduce title from Harrison to parts of this land.
The appellant claims under a grant issued on the 1st day of March, 1784, founded on a survey of the 14th of February, 1783, and on an entry made the 30th of May, 1780, on a treasury warrant.
In an ejectment brought against all the persons occupying the land covered by his patent, judgment was rendered in his favour; whereupon, several of the defendants filed their bill on the equity side of the Court, setting forth their better title, under the pre-emption warrant of Harrison, and praying that Stephens might be enjoined from proceeding farther at law, and might be decreed to convey to them, respectively, the lands they held under Harrison.
An amended bill was afterwards filed, with the leave of the Court, in which two of the defendants in the suit at law, who were not parties to the original bill, united with the original complainants. This amended bill sets forth, that on the 10th day of May, 1780, Richard Barbour made a valid entry of 1000 acres of land, on a treasury warrant, which was surveyed in January, 1786, and patented in June, 1787. One of the original complainants, and the two complainants introduced in the amended bill, show a regular title under this patent.
The answer of the defendant put the claims in issue, and the Court sustained the titles both of *504 Harrison and Barbour, and directed the defendant, Stephens, to convey to the plaintiffs so much of the land recovered by him in the suit at law, as was held by those titles.
From this decree Stephens has appealed; and his counsel alleges, that it is erroneous, because,
1. The titles of Harrison and Barbour are united in the same bill.
2. Stephens has the better title in equity, as well as law.
1. As to the form of the proceedings:
It may be admitted, that two persons cannot unite two distinct titles in an original bill, although against the same person. Such a proceeding, if allowed, might be extended indefinitely, and might give such a complexity to Chancery proceedings, as would render them almost interminable. But we know of no principle which shall prevent a person claiming the same property by different titles, from asserting all his titles in the same bill. If this principle be correct, then, as three of the complainants held under both titles, three would be a strict propriety in submitting both titles to the Court.
This would not be questioned, so far as the same land was claimed by both titles. So far as the surveys of Barbour and of Harrison interfered with each other, and the same person held under each, he would be unquestionably correct in comprehending both claims in the same bill. If this were the fact in only a small portion of the land, still the two titles may be brought before the Court; and if this may be done, it would follow, that all who *505 claim under either, and who are properly in Court, may assert their claims under both titles.
But a joint judgment has been rendered at law, against all these complainants, and they have an unquestionable right to unite in their application to a Court of equity, for an injunction to this judgment. The Court may, consequently, hear the whole cause, for the purpose of determining whether this injunction shall be perpetuated; and it is a rule, that a Court of equity, which has jurisdiction of a question, may proceed to its final and complete decision. Directing a conveyance, is only making that relief, which would be afforded by a perpetual injunction, more complete.
We think, that all those against whom the judgment at law was rendered, might properly unite in this bill, and assert their titles under Barbour and Harrison, or either of them.
We proceed, then, to the inquiry, whether the appellant or the respondent have the better title in equity.
This inquiry is confined to that part of the case which respects the title under Harrison. Barbour's entry, being prior to that of Stephens, gives a better equitable title, according to the settled course of decisions in Kentucky, if the entry be a valid one, as this is admitted to be.
The land law of Virginia, under which all parties claim, makes a pre-emption warrant superior to a treasury warrant, wheneven they interfere with each other, unless the holder of the pre-emption warrant shall have forfeited that superiority, by failing to comply with some of the requisites of *506 the law. One of these is, that the warrant shall be entered with the surveyor of the county within twelve months after the end of the session of Assembly in which the law was enacted. That session of Assembly ended on the 26th of June, 1779, and, consequently, the time given by this act for making entries, expired on the 26th of June, 1780.
But the Legislature was induced, by weighty considerations, to prolong this time, and various acts of Assembly were passed, which did prolong it, until after this entry was made. It has been supposed, however, that there was, at least, one interval between the expiration of the law and the act of revival; and this circumstance gives birth to the present controversy.
The right of the Legislature to give farther time for entering pre-emption warrants, has never been drawn into doubt; but the influence of such laws on the rights or claims of others, has been questioned. The appellant contends, that by making his entry on the 30th of May, 1780, he acquired an inchoate right to the land, which could be defeated only by such an observance of the law, on the part of the person possessing the pre-emption warrant, as would preserve it from forfeiture; and that the land vested in him, by virtue of his entry, the instant the forfeiture took place.
We will inquire how far this principle is countenanced by the words of the act.
When the Virginia Assembly was about to open a land office, for the purpose of selling the immense tract of vacant territory within its limits, certain pre-existing rights were recognized and *507 affirmed; and others, which had no previous legal existence, were created, and conferred on meritorious individuals, as a reward for the fatigue and hazard encountered in exploring the country. Of the latter description, was the pre-emptive right, given to him who had marked and improved a tract of land. When the land office was opened, it was opened for the sale of waste and unappropriated land, not for the sale of land already appropriated, or of land, a right to appropriate which was vested by law in another; consequently, no entry, strictly speaking, was authorized, either by the act or the words of the warrant, on lands which were not at the time waste and unappropriated.
The words of the law opening the land office, are, "Be it enacted, that any person may acquire title to so much waste and unappropriated land, as he or she shall desire to purchase, on paying the consideration of forty pounds for every hundred acres," &c. The land, then, which was brought into market and offered for sale, on which the purchaser might place his warrant, and to which he might acquire a title, was "waste and unappropriated land;" land to which another had by law a pre-emptive right, could not be of this description. So long as that pre-emptive right continued, it was withdrawn from the general mass of property brought into market and offered for sale; it was land to which the power of appropriation conferred by the warrant did not extend.
The idea and intention of the Legislature, on this subject, is more clearly expressed in the clause *508 which provides for the disposition of the property in the event of a failure to make the entry within the time limited by law. It is in these words: "And where any such warrant shall not be entered and located with the county surveyor, within the before mentioned space of twelve months, the right of pre-emption shall be forfeited, and the lands therein mentioned may be entered for by any other person holding another land warrant; but such pre-emption warrant may, nevertheless, be located on any other waste and unappropriated lands, or upon the same lands, where they have not, in the mean time, been entered for by some other."
It would be, at least, useless, to grant an express power to the holder of a common treasury warrant, to locate the land after the forfeiture of the pre-emption right, if that power had been previously granted by the general clause, which enables him to locate waste and unappropriated land; and the limitation on the right of location, which makes it to commence after the forfeiture of the pre-emptive right, is opposed to the idea of its pre-existence.
The subsequent words authorize the holder of the pre-emption warrant to locate it "on any other waste and unappropriated lands, or upon the same lands, where they have not, in the mean time, been entered for by some other."
There can be no doubt that the words, "in the mean time," do of themselves import that interval which occurred between the forfeiture of the pre-emption right and the re-entry of the warrant. *509 Only an entry made in this interval, obstructs the re-entry which may be made by the holder of the pre-emption warrant. If the sense of these words could be rendered still plainer, it would be done by considering them in connexion with the other parts of the sentence. The entry which is preserved and protected against the re-entry of the pre-emption warrant, is that which had just before been authorized; that is, an entry made after the right of pre-emption had been forfeited. If the pre-emption warrant of Harrison had been re-entered, and had come in conflict with the entry of Stephens, made prior to its forfeiture, it must have prevailed, or the words of the law have been entirely disregarded. The act of Assembly, prolonging the time for making his entry, is certainly equivalent, while in force, to a re-entry made by himself without such act. It was in force when his entry was made, on the 5th day of June, 1786.
Upon the words of the law, then, there can be no doubt respecting the superiority of the title under Harrison, so far as it depends on the entries. The difficulty is produced by the circumstance that a patent was issued to Stephens before the warrant of Harrison was entered with the surveyor.
The entry of Stephens was made on the 30th day of May, 1780, before the pre-emptive right of Harrison had expired. The survey was made on the 14th of February, 1783, while the act of May session, 1782, which prolonged the time for making these entries until June, 1783, was in force. The patent issued on the 1st of March, *510 1784, at a time when the act, passed in 1783, prolonging the time for making entries until nine months after the end of that session of Assembly, was in force.
It is not, we think, to be doubted, that the several acts of Assembly, prolonging the time for entering pre-emption warrants, have the same effect, except as to entries made "in the mean time," that is, in the interval between a forfeiture and a renewal of the right, that would be allowed to the original act, had it continued in force until after Stephens obtained his patent.
The act of 1783 expired in June, 1784, and was revived and continued, by a subsequent law, until November, 1786. It was during the existence of this law that Harrison's entry was made.
The pre-existing law was permitted to expire before the act for its revival and continuance was passed; and the appellant contends, that this interval cured all the defects in his title, and placed it beyond the reach of any legislative enactment. In support of this position, he relies on the principle settled in Kentucky, that a patent is an appropriation of land, and that no subsequent entry can draw its validity into question. He relies also on the case of Hoofnagle et al. v. Anderson, (7 Wheat. Rep. 212.)
The Court has felt great difficulty on this point. The proposition that a patent is an appropriation of the land it covers, although the proceedings previous to its emanation may be irregular and defective, is unquestionably true; but this principle has never, so far as is known to the Court, *511 been applied to a case in which the opposing title to the particular land in controversy, had its commencement before the patent issued. In the case of Hoofnagle and others v. Anderson, the plaintiffs sought to set aside a patent by an entry made after the grant had issued, on a warrant which gave no specific claim to the particular land in controversy, but a general right to locate any unappropriated land in the military district. In that case, too, the warrant, under which Anderson's patent had been obtained, was issued to an officer really in the State line, but said, by mistake, to belong to the continental line. It was, originally, equally entitled with that under which Hoofnagle and others claimed, to be placed in the military district north-west of the Ohio, and had lost that equal right by an act of the Legislature, not entirely compatible with that strict regard to vested interests, which all governments deem a sacred obligation. The mistake in the warrant was a plain official error, not mingled with the slightest suspicion of fraud, and its holder, who was a purchaser without notice, had lost, in consequence of that mistake, the chance of acquiring any other land. The mistake, too, had done no more than to restore him a right which had been taken from him, perhaps inadvertently, certainly with a belief that no injury was done him.
The situation of both parties was different in that case from what it is in this. The party who obtained the patent, had an original right, equal to that of the person who demanded the land. In *512 this case, the appellant has no such original right. The warrant of Hoofnagle and others gave them no particular claim to the land in controversy; but, in this case, Harrison's warrant gave him, and those claiming under him, originally, an exclusive right to the particular land in controversy. That exclusive right, it is true, was forfeitable, and was at one time forfeited. But the Legislature, which created the right, and limited its duration, might, with the strictest propriety, prolong its existence; and might also prescribe the manner in which the property should be afterwards acquired by any other person. The Legislature has prescribed that manner. It is by an entry made when the pre-emptive right was forfeited. With the single exception of the claim given by such an entry, the Legislature might certainly remit the forfeiture, and reinstate the pre-emptioner in his original rights.
A title acquired according to law, might very properly be considered as obstructing the operation of this reinstating act, and be sustained against him; but a title which, in no stage of its progress, was authorized by law, appears under circumstances much less favourable. That patents obtained on improper entries have prevailed against persons whose titles commenced after such patents have issued, is no authority for the opinion that such patents ought to prevail against a title which traces its commencement to a time anterior to the emanation of the patent. The only difficulty in the case consists in connecting the right of the pre-emptioner, at the time his *513 entry was made, with the original right given by the act which opened the land office. That act gave the person who had marked and improved a piece of ground, the pre-emption to 1000 acres of land, to include his improvement, provided the warrant was entered within twelve months. That any act prolonging the time for making this entry, would continue the original right, is not to be questioned. It is plainly the intention of the Legislature, and nothing can prevent that intention from being effectual, but the intervention of some other title, which the Legislature cannot rightfully remove. The original act shows how that other intervening title may be obtained. It is by an entry made while the pre-emptive right had no existence.
Considering this question as being res integra, entirely unaffected by the decisions made in the Courts of Kentucky, the opinion of this Court would be, that a title acquired while the pre-emptive right of Harrison was in force, could not be sustained against his entry, if made according to the act by which his right was continued. We do not think that this opinion is opposed to the decisions of Kentucky, because no decision has ever been made in that country against a pre-emption right, properly entered, under the acts of Assembly for continuing the original law in favour of a treasury warrant, located while those laws were in force. Titles under treasury warrants, entered during the existence of a prior right, have been sustained against other subsequent entries, *514 made under similar circumstances; but never, so far as we are informed, against that prior right, if completed according to acts of the Legislature prolonging the time for its completion.
In the case of Alsted et al. v. Miller, (Hardin, 193.) the Court of Appeals of Kentucky decided in favour of a title founded on a pre-emption warrant, entered in December, 1782, against a title founded on a treasury warrant, entered on the 9th of June, 1780. That case is admitted to differ essentially from this, because, when Miller's pre-emption warrant was entered, no interval had occurred between the different acts, during which the land might have been legally entered; and because, too, Miller's appears to have been the oldest patent. But in that case the Court decided that the time for entering the pre-emption warrant might be prolonged, notwithstanding the previous entry of a treasury warrant on the same land. The Court observed, that the holders of treasury warrants purchased, subject to the reservations made in favour of pre-emptioners; that the Legislature might have permitted this reserved land to return to the common fund, on the failure of the person holding the pre-emption warrant to comply with the terms of the law, or might dispense with those terms in his favour, and prolong the time allowed for making his entry. The principle of this decision is, that an entry made during the existence of the pre-emptive right, is not such an inceptive title, as could be defeated only by the performance of the condition on which *515 the pre-emption right depended, at the time his entry was made. It gave him no rights which were not under the control of the Legislature, and might not be defeated by an act giving the pre-emptioner farther time to enter his warrant.
So far, then, as the decisions of Kentucky go, they are rather in favour of the opinion, that the original right of Harrison was preserved, notwithstanding the interval during which it was forfeited, since the entry of the appellant was not made in that interval.
The decree of the Circuit Court affirmed, with costs.