WESTINGHOUSE AIR BRAKE CO. v. KANSAS CITY SOUTHERN RY. CO.

(Circuit Court of Appeals, Eighth Circuit. April 12, 1905.)

No. 2,106.

1. PLEADING—MULTIFARIOUSNESS—IMPRACTICAL OR INCONVENIENT JOINDER.

The vice of multifariousness is the union of causes of action which, or of parties whose claims, it is either impractical or inconvenient to hear and adjudicate in a single suit. Where it is as practical and convenient for court and parties to deal with the claims and parties joined by a petition in one suit as in many, there is no multifariousness.

[Ed. Note.—For cases in point, see vol. 19, Cent. Dig. Equity, § 340.]

2. SAME—JOINDER OF TWO CAUSES FOR SAME RELIEF PERMISSIBLE.

The union of two or more causes of action for the same demand or relief does not render the bill or petition which presents them multifarious.

[Ed. Note.—For cases in point, see vol. 19, Cent. Dig. Equity, §§ 341, 345.]

3. SAME—JOINDER OF MECHANIC'S LIEN AND EQUITABLE LIEN PERMISSIBLE.

The union of a cause of action upon a mechanic's lien and a cause of action upon an equitable preference in a bill to enforce the same demand against the same property does not render the pleading multifarious.

4. FEDERAL COURTS—CONSTRUCTION OF STATUTES—FOLLOWING DECISIONS DESTRUCTIVE OF CONTRACT RIGHTS.

Decisions of the state courts which so construe their statutes as to destroy or impair rights previously acquired through contracts between citizens of different states under statutes and constitutions which warranted and sustained them when they were vested are not obligatory upon the courts of the United States.

[Ed. Note.—State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

**5. Mechanic's Lien—Furnishing Materials in Good Faith Sufficient.**

The furnishing to a railroad company of proper materials to be used by it in the construction or improvement of its railroad or equipment is sufficient to sustain a mechanic's lien under sections 4239 et seq., Rev. St. Mo. 1899, without proof of the application and use of them for that purpose.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, § 490.]

**6. Same—Waiver by Note Due after Time to Enforce Lien.**

· The acceptance for a debt secured by a mechanic's lien of a promissory note which matures subsequent to the time fixed by the statute for the commencement of an action to foreclose the lien estops the creditor from enforcing the lien, and destroys it.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Mechanics' Liens, § 389.]

**7. Same—Not Revived by Subsequent Deliveries of Materials.**

A mechanic's lien once destroyed is not capable of revival, in the absence of fraud or mistake.

The subsequent delivery of materials under the same original contract will not revive a lien for a prior debt which has once been destroyed.

**8. Same—Foreclosure of Mortgage—Preferential Claims in Equity—Time of Accrual.**

The general rule, subject to exceptions on account of peculiar equities, is that preferential claims for labor or materials furnished for the operation of a railroad must accrue within approximately six months preceding the impounding of the income and seizure of the property by the mortgage bondholders.

One whose claim accrued more than 17 months before the impounding of the property by the mortgage bondholders, and who extended the time of its payment for 18 months after it was due, is not entitled to a preference over the mortgage bondholders in the payment of his claim either out of the income or the proceeds of the mortgaged property.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Western District of Missouri.

For opinions below, see 128 Fed. 129; 129 Fed. 455.

This is one of the remnants of the foreclosure of the mortgage of the Kansas City, Pittsburgh & Gulf Railroad Company. It is an appeal from a decree which dismissed the intervening petition of the Westinghouse Air Brake Company.

On April 1, 1893, the Gulf Company mortgaged its property to the State Trust Company and another, as trustees, to secure the payment of its bonds to the amount of $23,000,000. On April 6, 1899, the Trust Company exhibited its bill to the Circuit Court for the Western District of Missouri for a foreclosure of this mortgage, and on April 28, 1899, that court appointed receivers of the railroad and of the other mortgaged property, and ordered them to pay out of any revenues which came to their hands all debts lawfully contracted by the Gulf Company after May 1, 1898, for materials and supplies and in the maintenance and operation of the railroad, and that other claims and demands should only be paid upon orders of the court subsequently made. On February 5, 1900, a decree of foreclosure and sale was rendered, which provided that the purchaser or purchasers of the property thereunder, their successors and assigns, should take it subject to the condition that they should pay any indebtedness or liability of the Gulf Company which should be finally decreed to be prior in lien or superior in equity to the mortgage of April 1, 1893. The Kansas City Southern Railway Company is the successor of the purchasers under this decree, and it took the mortgaged property subject to the conditions of the decree, and became a party to the foreclosure suit on March 20, 1900.

On January 1, 1896, the Gulf Company agreed to purchase of the Westinghouse Air Brake Company all the air brake and signal apparatus and materials it should use on its railroad at certain specified prices, subject to cer-

tain rebates on certain conditions. Between February 19, 1897, and November 11, 1897, the Brake Company furnished to the railroad company under this contract brake and signal materials for which there is a balance due of $12,316.21, which is evidenced by a note of the Gulf Company, dated November 17, 1898, which is the last renewal of a note of that company for $32,316.21, which was made November 11, 1897. Between November 11, 1897, and the appointment of the receivers, the Brake Company furnished to the Gulf Company brake and signal materials, the schedule price of which was $14,659.63. After deducting the rebates to which the Gulf Company was entitled, and a payment of $1,091.66 made by the receivers, there remained $11,271.05 owing on this account. Of this amount $8.404.71 was due for materials used by the Gulf Company between May 1, 1898, and April 28, 1899.

For these amounts of $12,316.21, evidenced by the note of the Gulf Company, and $11,271.05, due for materials furnished after November 11, 1897, the Brake Company filed a statement for a lien on the property of the railroad company, under sections 4239 et seq. of the Revised Statutes of Missouri, on May 10, 1899.

On June 15, 1899, the Brake Company intervened in the foreclosure suit and filed its petition, in which it set forth its contract, the furnishing of its materials, the filing of its statement for a lien, and prayed that it be adjudged to have a statutory lien upon the mortgaged property superior to that of the bondholders, and that its claim be paid out of the income or proceeds of the mortgaged property. On September 8, 1900, the Brake Company filed its amended petition, in which it again set forth its statutory lien, and also pleaded that the materials it furnished were essential to, and that the debt incurred for them was a part of the current expenses of, the operation of the railroad; that, after these materials were furnished, the Gulf Company and the receivers had diverted the income of the mortgaged property from the payment of current expenses to the payment for permanent improvements and of interest on the mortgage debt in amounts far in excess of the claim of the Brake Company; and it prayed for a decree that it had both a statutory lien and a preferential equitable lien upon the mortgaged property, and that its claim be paid out of its income or out of the proceeds of its sale. The Kansas City Company interposed an answer to this petition, in which it denied its averments. A replication was filed, and the case was referred to the master. He heard the evidence, and reported that the Brake Company had both a mechanic's lien and a preferential equitable lien for the $11,271.05 due for materials furnished after November 11, 1897, but that it had no lien for the $12,316.21 owing for materials delivered before that time. Exceptions were filed to this report by both parties, and, after argument, the court held that the amended petition was multifarious, because it counted upon both the mechanic's and the preferential equitable lien, and ordered the petitioner to elect upon which it would rely. The Brake Company chose the equitable lien. Thereupon the Southern Railway Company prayed and was granted leave to file an amended answer, in which it claimed for the first time that the Brake Company had an adequate remedy at law on its mechanic's lien, and that by filing its statement for that lien it had waived its claim for a preferential equitable lien. The Circuit Court sustained this claim, and dismissed the petition of the Brake Company.

Albert Blair and Delbert J. Haff (William C. Michaels and Lewis W. McCandless, on the brief), for appellant.

Samuel W. Moore and Fred H. Wood (Gardiner Lathrop and Thomas H. Reynolds, on the brief), for appellee.

Before SANBORN and HOOK, Circuit Judges, and RINER, District Judge.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

According to the averments of the intervening petition, the Brake Company had furnished to the Gulf Company within two

years of the appointment of the receivers of its property in the foreclosure suit brake and signal materials which were essential to, and which were used by it in, the maintenance and operation of its railroad, which were worth at least $23,587.26 more than the Brake Company had been paid for them. It had done this in reliance upon the expectation of the payment of its claim out of the income of the Gulf Company, and, in reliance upon the statutes of Missouri which give to the holder of such a claim a lien upon the property of a railroad company superior to that of a prior mortgage. Rev. St. Mo. 1899, §§ 4239–4241. After it had furnished these materials the Gulf Company and its receivers diverted its income from the payment of current expenses to the payment of interest on the mortgage debt, and to the payment for permanent improvements to an amount in excess of the aggregate amount of the claim of the Brake Company and of other claims of like character. These facts gave to the petitioner a lien upon the property of the Gulf Company superior to that of the mortgage for at least that portion of the claim due for materials furnished within six months of the receivership, on two grounds: (1) Because the statutes of the state of Missouri granted to it such a lien, and (2) because an established principle of equity jurisprudence vested in it such a lien. Southern Ry. Co. v. Carnegie Steel Co., 176 U. S. 257, 285, 286, 20 Sup. Ct. 347, 44 L. Ed. 458; Illinois Trust & Savings Bank v. Doud, 105 Fed. 123, 44 C. C. A. 389, 52 L. R. A. 481.

The Circuit Court, sitting in equity, had taken possession of the property covered by this lien for the purpose of foreclosing the mortgage upon it. It was in the custody of that court, and the Brake Company presented to it its petition for the allowance and enforcement of its superior lien, both on the ground that it was granted to it by the statute, and on the ground that it was assured to it by the rule in equity that the liens of unpaid claims for the current expenses of the ordinary operation of a railroad for a limited time before the receivership are superior to those of prior mortgages.

It is said, and the court below ruled, that because the petitioner presented two causes of action, one founded on the statute and the other on the rule in equity, in support of its demand, its petition was multifarious, and it must necessarily abandon one of its grounds for relief before the courts will listen to the other. This contention is supported by arguments (1) that the statutory or mechanic's lien and the preferential equitable lien are distinct and independent matters (Story's Equity Pleadings [10th Ed.] § 271; Fletcher on Equity Pleading and Practice, §§ 107, 108), (2) that the claims for the two liens are inconsistent and repugnant, and (3) that the measures of relief permissible in enforcing them differ.

The claim that one of the liens may secure more of the debt of the petitioner than the other, and hence that one of them may warrant a larger measure of relief than the other, is not denied. Neither can the proposition that both secure that portion of the debt incurred for materials furnished within six months of the re-

ceivership be successfully gainsaid. Hence they both secure the same debt, though one of them may secure an additional debt which the other does not protect. They cover the same property, for the diversion of the income makes the equitable claim a lien on the corpus of the property as well as the claim under the statute, and if the mechanic's lien reaches the property in Missouri only, while the equitable lien covers all the property, they both attach to the former, and this alone is ample to satisfy the demand of the petitioner. The controversies over the two liens arise between the same parties. The petitioner seeks the identical relief under each —the payment of its claim by the purchaser of the property, the Southern Railway Company. These facts persuade, nay, they convince, that neither the liens nor the facts which condition their enforcement are distinct and independent matters, but that they present homogeneous and correlative claims between the same parties.

It is said that the claims for the two liens are inconsistent because an express or implied reliance upon the corpus of the property for payment is essential to the mechanic's lien, and such a reliance upon the income and its subsequent diversion are indispensable to the equitable preference. But a reliance upon the corpus is not inconsistent with a reliance upon the income also. A vendor or laborer may, and the legal presumption is that he does, rely upon both, because it is a fact, so universally perceived that courts may not be blind to it, that those entitled to mechanics' liens generally rely not only on the property which by a tedious course of litigation they may apply to the payment of their claims, but also upon the vendee's agreement to pay in money, and upon the expectation that he will pay for the property he buys out of his income, and thus relieve them from the expense and delays of lawsuits.

Nor does the argument that the two claims are repugnant because the Gulf Company extended the time of payment of the claim beyond the time prescribed by the statute for the filing of the statement for a mechanic's lien persuade. It is true that a vendor may, by an agreement to renounce his claim to a mechanic's lien, or by acts clearly inconsistent with its enforcement, which induce his vendee to change his position so that he will sustain a loss by its assertion, which he would have escaped if the vendor had not thus misled him, waive his lien. But, so long as the account remained open and running, the time to file the statement for the lien advanced pari passu with the delivery of the materials. It was always 90 days ahead of the delivery of the last item, and there was nothing in the agreement to pay out of the income which in any way extended the time for the payment for the materials furnished after November 11, 1897, beyond that 90 days. One may take and rely upon a mortgage on personal property and upon another on real estate to secure the same debt. Bondholders rely upon liens under the same mortgage upon the income and upon the real property of railroad companies, and the assertion of one of these liens is not a waiver of the other. And there is neither

inconsistency nor repugnance between a claim of an equitable lien on the income and a claim of a mechanic's lien on the property of such a company to secure the same debt.

The third objection to the joinder of the claims to the two liens is that the measures of relief to which the Brake Company is entitled under them differ. This may be technically true, because under the mechanic's lien the mortgaged property in Missouri only is liable, while under the equitable preference and the diversion of income all the mortgaged property is liable to the payment of the debt. But this fact is without actual or practical effect upon the remedy, and it ought not to prevent substantial relief, because the mortgaged property in Missouri is ample to satisfy the claim, and it is patent that the result will be that its purchaser, the Southern Railway Company, will immediately pay the amount secured by either lien upon a final decision of the controversy. Moreover, the petitioner may receive from the court the largest measure of relief to which either lien entitles him. He may recover the largest portion of his debt which either lien secures, and the fact that the other lien also secures a part of the same debt is a reason, not for independent petitions and hearings upon the claims for the two liens, but for a single presentation, hearing, and adjudication of both. The claims and causes of action for a mechanic's lien upon the real property of the Gulf Company, and for an equitable lien upon that property and its income to secure the same debt, were not, therefore, distinct and independent, but cognate and connected, matters, and they were neither repugnant to nor inconsistent with each other.

An intervening petition in a foreclosure suit for the preferential payment of a claim on both grounds is not without precedent. Cleveland, C. &. S. R. Co. v. Knickerbocker Trust Co. (C. C.) 86 Fed. 73, 74; Southern Ry. Co. v. Carnegie Steel Co., 76 Fed. 492, 22 C. C. A. 289; Id., 176 U. S. 258, 272, 20 Sup. Ct. 347, 44 L. Ed. 458; Toledo, D. & B. R. Co. v. Hamilton, 134 U. S. 296, 10 Sup. Ct. 546, 33 L. Ed. 905; International Trust Co. v. Townsend Brick & Contracting Co., 95 Fed. 850, 855, 37 C. C. A. 396, 401.

The vice of multifariousness is the union of causes of action which, or of parties whose claims, it is either impractical or inconvenient to hear and adjudicate in a single suit. Where this vice does not exist, where it is as practical and convenient for the court and the parties to deal with the claims or causes of action presented, and the parties joined by a petition, in one suit as in many, the pleading is not multifarious, and it should be sustained. It is more practical and convenient to hear and determine all the claims a petitioner makes for the same relief against the same defendant in a single suit than in several actions, and, to prevent a multiplicity of suits and compel the presentation of all such claims in the same action, the rule has been established that a judgment between the same parties upon the same demand estops them from again litigating every admissible matter which might have been offered to sustain or defeat that claim or demand. Cromwell v. County of Sac, 94 U. S. 351, 352, 24 L. Ed. 195; Board of Com-

missioners v. Platt, 25 C. C. A. 87, 91, 79 Fed. 567, 571. Hence the union of several causes of action for the same demand or relief in a bill or petition does not constitute multifariousness. Stephens v. McCargo, 9 Wheat. 502, 504, 6 L. Ed. 145; Gerrish v. Towne, 3 Gray (Mass.) 82; Chaffin v. Hull (C. C.) 39 Fed. 887, 889, 891; Halsey v. Goddard (C. C.) 86 Fed. 25; Davis v. Berry (C. C.) 106 Fed. 761; Cutter v. Iowa Water Co. (C. C.) 96 Fed. 777; Williams v. Crabb, 117 Fed. 193, 202, 54 C. C. A. 213, 222, 59 L. R. A. 425; U. S. v. American Bell Tel. Co., 128 U. S. 315, 9 Sup. Ct. 90, 32 L. Ed. 450; Rincon Water & Power Co. v. Anaheim Union Water Co. (C. C.) 115 Fed. 543, 552; Moody v. Flagg (C. C.) 125 Fed. 819, 820; Barcus v. Gates, 89 Fed. 783, 791, 32 C. C. A. 337, 345; Bradley v. Converse, 4 Cliff. 366, 375, Fed. Cas. No. 1,775; Hayden v. Thompson, 71 Fed. 60, 67, 17 C. C. A. 592, 599; Kelley v. Boettcher, 85 Fed. 55, 64, 65, 29 C. C. A. 14, 23.

In Stephens v. McCargo, 9 Wheat. 502, 504, 6 L. Ed. 145, the complainants claimed title to the lands under two surveys and grants, while the defendant claimed under a third. The decree was challenged on the ground that the complainants had united the two surveys and titles under which they claimed. But Chief Justice Marshall said:

"It may be admitted that two persons cannot unite two distinct titles in an original bill, although against the same person. * * * But we know of no principle which shall prevent a person claiming the same property by different titles from asserting all his titles in the same bill."

In Gerrish v. Towne, 3 Gray (Mass.) 82, the complainant alleged in his bill that he was entitled to the conveyance of the land by the terms of an express written contract with the defendant, and also that he was entitled to the lands under a resulting trust which arose from the fact that the defendant acquired the title while the confidential relationship of principal and agent existed between the complainant and him. Judge Bigelow said:

"The bill is framed with a double aspect, and alleges the right of the plaintiff to the conveyance which he seeks on two grounds. * * * This is entirely consistent with the established rules of equity pleading. A party may well frame his bill in an alternative form, and aver facts of a different nature in its support."

In Halsey v. Goddard (C. C.) 86 Fed. 25, 28, the complainant sought to compel the trustees under the will of Halsey to convey certain lands to him. He pleaded two causes of action: First, that under the terms of the will he was the sole devisee of the lands in question, and hence was entitled to a conveyance; and, second, that he was the heir at law of Halsey, and, if his will was invalid, he was entitled to a conveyance of the lands as heir. Judge Brown said:

"It seems clear that a bill may state the facts and properly ask relief in the alternative according to the conclusions of law that the court may draw."

In Chaffin v. Hull (C. C.) 39 Fed. 887, 889, 891, Chaffin sought to divest Hull and others of the title to certain lands upon the grounds (1) that a conveyance under which they claimed had, by a mistake

of the scrivener, been made to convey only a life estate when it was intended to convey a fee, and (2) that the defendant, Hull, was the confidential agent of the complainant, and, after he had been informed of this mistake, obtained the title to the lands for himself and certain co-conspirators by virtue of certain legal proceedings. There was a demurrer to the bill on the ground that it was multifarious, and this was heard before Judge Brewer, now Mr. Justice Brewer, and Judge Thayer. They sustained the bill, and Judge Brewer said:

"So, there being a unity of interest in the parties complainant and the parties defendant, a single property the subject of litigation, and a single ultimate purpose the object of the suit, we have concluded that in the interests of justice and equity, and a speedy settlement of the title to that property, the court is justified in holding that the bill is not multifarious."

In Davis v. Berry (C. C.) 106 Fed. 761, the complainant pleaded two separate grounds to secure an avoidance of a lease: First, that the president and secretary of a certain corporation, who executed it, had no authority to do so; and, second, that the defendant had forfeited the lease by a failure to comply with certain of its terms. A demurrer to the bill for multifariousness was overruled.

In Barcus v. Gates, 89 Fed. 783, 791, 32 C. C. A. 337, 345, the Circuit Court of Appeals of the Fourth Circuit says:

"A bill is not multifarious because there are several causes of action. If they grow out of the same transaction, and if all the defendants are interested in the same rights, and the relief against each is of the same general character, the bill may be sustained."

Daniel, in his Chancery Pleading and Practice, vol. 1, *343, *344 (6th Am. Ed.) says:

"When the matters are homogeneous in their character, the introduction of them into the same bill will not be multifarious; and it is to be observed that this distinction will not be affected by the circumstance of the plaintiff claiming the same thing under distinct titles, and that the statement of such different titles in the same bill will not render it multifarious."

Story's Equity Pleadings lays down the rule that:

"Where there is a joinder of distinct claims between the same parties, it has never been held as a general proposition that they cannot be united, and that the bill is of course demurrable for that cause alone, notwithstanding the claims are of a similar nature, involving similar principles and results; and may therefore without inconvenience be heard and adjudged together. * * * On the contrary, a different doctrine has been maintained, and it seems now supported by the most satisfactory authority." Sections 531, 532, p. 461 [10th Ed.].

Fletcher in his Equity Pleading and Practice, § 108, at page 145, says:

"A bill is not multifarious because it alleges several grounds in support of the same claim, and is not multifarious because it joins two good causes of complaint growing out of the same transaction."

The petition of the Brake Company presented but a single demand—a demand for the preferential payment of its claim. It set forth two titles to this relief—the mechanic's lien and the equitable lien. The demand and the liens arose out of the same

transaction, involved the same property and the same parties. The liens secured the same debt, and the failure to present either of them in support of the proceeding of the Brake Company for the preferential payment of its claim would have inevitably estopped it from subsequently enforcing that lien, because it was an admissible matter which the Brake Company had the right and the power to present in that proceeding to sustain its demand. The pleading of the two liens did not, therefore, render the petition multifarious, and the order of the Circuit Court to compel the Brake Company to elect between them was erroneous. The joinder of a cause of action to enforce a mechanic's lien and a cause of action to enforce an equitable lien upon the same property, to secure the same debt, in a bill or petition to enforce the preferential payment of the debt, does not render the pleading multifarious, because it is more convenient and practicable to try and adjudicate these causes of action in one suit than in several.

As the petitioner was erroneously compelled to elect upon which lien it would rely after the issues relative to both had been tried and decided by the master, these issues are now here for our adjudication under the master's report and the exceptions thereto, and those which relate to the mechanic's lien will first be considered. The report of the master was that the petitioner had a statutory lien for the agreed price of the materials which it furnished subsequent to November 11, 1897, which amounted to $11,271.05. This conclusion is assailed (1) because some of the materials were furnished to the Gulf Company without the state of Missouri, (2) because some of them were applied to cars of other railroad companies, (3) because some of them were used upon cars owned by a car trust but which were in the possession of the Gulf Company under a contract of purchase, and (4) because the evidence was insufficient to sustain the claim for the lien.

On March 17, 1904, about five years after the petitioner furnished its materials, the Supreme Court of the state of Missouri decided that one who furnishes materials to a railroad company without that state is not entitled to a lien upon its railroad property within the state, under section 4239 of the Revised Statutes of Missouri of 1899. That statute reads:

"All persons who shall do any work or labor in constructing or improving the road-bed, rolling-stocking, station houses, depots, bridges or culverts of any railroad company, incorporated under the laws of this state, or owning or operating a railroad within this state, and all persons who shall furnish ties, fuel, bridges or material to such railroad company, shall have for the work done and labor performed, and for the materials furnished, a lien upon the road-bed, station houses, depots, bridges, rolling-stock, real estate and improvements of such railroad, upon complying with the provisions hereinafter mentioned."

This legislation gave the lien in broad terms to every one who performed labor or furnished materials anywhere to any railroad company which owned a railroad in the state of Missouri, without any exception of work done or materials furnished to it without the state, and without any restriction or limitation to supplies furnished within the state. As the Legislature granted the lien

in unambiguous terms for all materials furnished either within or without the state, and made no exception, the conclusive legal presumption is that it intended to make none, and it is not the province of the courts to do so. This question was deliberately considered by the Supreme Court of Missouri in the year 1880, and it so held. It decided that "the statute is express that whoever shall furnish ties, fuel, bridges, etc., to a railroad company under a contract with said company, shall have the lien specified. There is nothing in the act to restrict this right to a lien to those who perform work on, or furnish materials for, that part of the road lying in this state." And that court enforced a lien upon the property of the defendant railroad company in Missouri for the value of materials which were furnished to it and were used by it to construct a bridge in the state of Kansas. St. Louis Bridge, etc., Co. v. Memphis, etc., R. Co., 72 Mo. 664, 666, 667. The law of the state of Missouri declared by this decision in 1880 remained unchallenged until March 17, 1904, when the highest judicial tribunal of that state announced the opposite conclusion. Meanwhile the Brake Company had made its contract, furnished its materials, and perfected its lien. Counsel invoked the familiar rule that the national courts uniformly follow the construction of the constitution and statutes of a state announced by its highest judicial tribunal in all cases which involve no question of general or commercial law and no question of right under the Constitution and laws of the nation, and they insist that this court is bound to follow the latest construction of this statute by the Supreme Court of Missouri, and to strike down the lien and the claim of the petitioner under its contract. There is, however, a commendable exception to this rule, as well recognized and as firmly established as the rule itself. It is that decisions of the state courts which so construe their statutes or constitutions as to destroy or impair rights previously acquired under contracts between citizens of different states pursuant to statutes and constitutions which, at the time the contracts were made, warranted and sustained those rights, are not obligatory upon the courts of the nation. Burgess v. Seligman, 107 U. S. 20, 27, 2 Sup. Ct. 10, 27 L. Ed. 359; Pleasant Tp. v. Ætna Life Ins. Co., 138 U. S. 67–72, 11 Sup. Ct. 215, 34 L. Ed. 864; Speer v. Board of Commissioners, 88 Fed. 749, 760, 32 C. C. A. 101, 113; Clapp v. Otoe Co., 45 C. C. A. 579, 104 Fed. 473; U. S. Sav. & Loan Co. v. Harris (C. C.) 113 Fed. 27, 38. The case at bar falls not under the rule, but under the exception. The statute by its plain terms gave a lien for materials furnished without as well as within the state. The Supreme Court of the state so adjudged. The law declared by both the legislative and judicial departments of the state of Missouri invited the petitioner, a citizen of another state, to make its agreement and to acquire its lien, and it may not now be lawfully deprived of its contract rights or of its statutory lien because the highest judicial tribunal of the state has changed the law after the event and after its rights were vested. An ex post facto change of the law by construction is as vicious as by legislation.

In the operation of its railroad the Gulf Company necessarily repaired the cars of other companies which were broken while they were passing over its railroads, and a small portion of the materials furnished by the petitioner were used for this purpose. It owned some of the cars with which it operated its railroad, and some of them were owned by a car trust, and were used by it under a contract of purchase upon which it had been making payments by installments. Some of the brakes and other materials were supplied to the cars owned by the trust. But these facts are not fatal to the lien. A vendor is not required to follow every valve, piston ring, and drain cup to the car to which it is attached, to trace the title of the car to the vendee, and to prove the application to and use of the article upon the car, in order to sustain his lien. It is sufficient that he complies with the statute in good faith, and furnishes fit materials to the railroad company to be used by it in the construction or improvement of its railroad or equipment. Central Trust Co. v. Chicago, K. & T. Ry. Co. (C. C.) 54 Fed. 598, 603; Thompson v. St. Paul City Ry. Co., 45 Minn. 13, 16, 47 N. W. 259; Neilson et al. v. Iowa Central R. R. Co., 51 Iowa, 184, 190, 1 N. W. 434, 33 Am. Rep. 124; Phillips on Mechanics' Liens, §§ 149, 150.

Nor can the objection that the evidence in support of the lien was insufficient to sustain the master's conclusion or to enable him or the court to determine its amount prevail. The contract, the orders for the materials, and evidence of the times and places of their delivery were presented, and the finding of the amounts delivered and the times when they were received by the Gulf Company is not without substantial support in the record. The conclusion is that the Brake Company had a lien upon the property of the Gulf Company in the state of Missouri, under sections 4239 et seq. of the Revised Statutes of that state of 1899, for $11,271.05 and interest, which was superior to that of the mortgage of April 1, 1893.

The right to recover interest upon this portion of the claim of the petitioner rests upon the same basis as the right to recover the principal. It is granted by the statute. Rev. St. Mo. 1899, § 4247.

The master reported that the petitioner had waived its claim for a mechanic's lien, and its claim for an equitable lien for $12,316.21, evidenced by the note of November 17, 1898, and this conclusion is specified as error by the appellant. The facts which condition the question here presented are these: On November 11, 1897, the Brake Company had delivered materials to the railroad company of the agreed price of $49,601.77, and it was pressing for an adjustment. The purchasing agent of the Gulf Company went to the president of the Brake Company and adjusted the account by receiving a credit for rebates to the amount of $7,440.26, by paying $9,845.30, and by giving the note of the Gulf Company for $32,316.21, payable six months after its date, and by making an agreement whereby the Gulf Company promised to pay $10,000 upon this note when it fell due, and the Brake Company agreed to

accept the Gulf Company's note for the balance, payable six months later. When the note matured the Gulf Company paid $2,099 upon it, received a credit of $7,901 for rebates, and gave a renewal note for the remaining $22,316.21, payable six months thereafter. When the second note fell due the Gulf Company paid $10,000, and executed the note now before us for $12,316.21, payable six months after November 17, 1898. The manager of the Brake Company, who was not present at this settlement, testified that the notes were not intended as payment, but as evidence of the debt. The president of the Gulf Company, who was also absent at the time of the settlement, testified that the purpose of giving the note at that time was to pay for the equipment according to the contract. The purchasing agent of the Gulf Company, who was the only witness present at the adjustment, said that the intention was to give the note representing the amount of the account at that date, with the understanding that the road should pay $10,000 of it every six months as the earnings would allow, so that it could place an order with the Brake Company for some additional equipment; that the note was given for the net amount the same as if the account had been settled in cash; that it was a sort of a striking of a balance to find the amount due up to that time, and to get that much of the indebtedness in easy circumstances; and that one purpose of putting the account due into a note was to get further credit, and to start a running account under the contract from that time.

The rules of law by which these facts must be tried are that any contract made by one who claims a mechanic's lien which is inconsistent with its foreclosure estops him from enforcing the lien and destroys the lien itself; that the legal presumption is that a promissory note taken in settlement of an account is simply evidence of the debt, and does not constitute a payment of it, but this is a rebuttable presumption, and the fact that the note was made and accepted in payment of the account may be established by competent evidence; that the acceptance, for an account secured by a lien, of a promissory note which matures within the time limited for the commencement of an action to foreclose the lien, does not waive the right to enforce it nor destroy the lien. Wisconsin Trust Co. v. Robinson & Cary Co., 32 U. S. App. 435, 441, 15 C. C. A. 668, 671, 68 Fed. 778, 781. But the acceptance for a debt secured by a mechanic's lien of a promissory note which does not mature until after the time fixed by the statute for the commencement of an action to enforce the lien destroys the lien and estops the creditor from enforcing it. Harris v. Youngstown Bridge Co., 90 Fed. 323, 326, 33 C. C. A. 69, 72; Blakeley v. Moshier, 94 Mich. 299, 54 N. W. 54, 56; Flenniken v. Liscoe, 64 Minn. 269, 270, 271, 66 N. W. 979; Willison v. Douglas, 66 Md. 99, 6 Atl. 530; Ehlers v. Elder, 51 Miss. 495; Pryor v. White, 16 B. Mon. 605; Quinby v. City of Wilmington, 5 Houst. 26; The Highlander, 4 Blatchf. 55, Fed. Cas. No. 6,475; Scudder v. Balkam, 40 Me. 291; Phillips on Mechanics' Liens, § 281. The reason for the last rule is patent. It is not founded upon the proposition, nor conditioned

by the fact, that the note is accepted in payment of the debt. It rests upon the fact that the acceptance of a note extends the time of payment of the debt until the note matures. The taking of a promissory note for a debt already due suspends the right of action to collect it, and the right of action to enforce any lien that secures it until the maturity of the note. If its due date is subsequent to the expiration of the time limited by the statute for the commencement of the action to enforce the security, the lien is necessarily renounced, and the payee of the note has estopped himself to enforce it the moment the note is accepted, because he cannot bring an action for that purpose without violating his contract to extend the time of payment of the debt until the note matures.

. The statutes of Missouri required an action to be commenced to enforce this lien within 180 days after the last item of materials for which the debt was incurred was furnished, and they provided that, if such an action was not commenced within that time, the lien should no longer exist. Sections 4241, 4244, Rev. St. Mo. 1899. The first note accepted by the Brake Company was not payable until after the time for commencing an action to enforce the lien, which secured the debt for which it was taken, had expired, and the Brake Company agreed, when it took this note, that it would extend the time for the payment of the portion of the debt it evidenced, which now remains unpaid for at least one year from that date. Both the note and the agreement to extend the time of payment of $22,316.21 of the debt were inconsistent with, and necessarily waived, the right to enforce the lien for it.

: Counsel for the Brake Company attempt to escape from this conclusion by a plausible and earnest contention that the debt evidenced by the notes still remained after the adjustment a part of the running account for materials furnished under the contract, so that subsequent orders and deliveries became a part of it, and thus repeatedly advanced the time within which an action to foreclose the lien for the debt evidenced by the notes could be commenced six months ahead of the respective items as they were delivered, so that the due dates of the notes were never really subsequent to the time for commencing the action. But, after the most careful consideration, this argument does not prove convincing. The first note was given on November 11, 1897. It was not due until after the time for commencing an action to foreclose the mechanic's lien which secured the debt it evidenced had expired. At the time this note was given the Brake Company agreed that the portion of it which now remains unpaid should not become due until November 11, 1898, more than six months after the time to institute a suit to foreclose the lien would expire. The moment the note and this contract were made, the Brake Company had agreed that it would not enforce the lien, since it could not do so without a violation of its note and contract. It was thereby estopped from enforcing the lien, and the lien itself was destroyed. The first item of materials ordered by the Gulf Company after this transaction was on December 30, 1897, more than

a month after the note and contract were made. During the time between the execution of the note and contract and the delivery of this item the lien did not exist, and the Brake Company was estopped to enforce it. The materials furnished under the orders isued subsequent to November 11, 1897, were secured by a subsequent lien. But they had no relation to the prior debt, and their delivery had no effect upon the defunct lien for the price of the materials for which the note had been taken. There was therefore no extension or revival of the old lien. In the absence of fraud or mistake, a mechanic's lien once dead may not be revived. A lien once renounced may not be recovered. Phillips on Mechanics' Liens, § 295; Blakeley v. Moshier, 94 Mich. 299, 54 N. W. 54, 56.

In the discussion of this question the fact has not been overlooked that the agreement to extend the time of payment of the balance of the note after the payment of the first $10,000 was not a binding contract. But the execution of the note estopped the Brake Company from enforcing, and renounced, the lien, and the agreement has been mentioned because it so strongly indicates the fact that the Brake Company was pursuing, and had decided to pursue, a course inconsistent with the retention of its lien.

In view of the acceptance of the notes and the extension of the time of payment of that portion of the debt now in suit beyond the time limited for the commencement of an action to enforce a lien for it, of the stated account which was the foundation of the first note, and which marked a separation of the debt it evidenced from that for materials subsequently delivered, and of the length of time which intervened between the execution of the first note and the subsequent delivery of materials, the conclusion of the master that the acts of the parties were inconsistent with the enforcement of a lien for any part of the debt evidenced by the note for $12,316.21 was neither unsupported by the evidence nor unwarranted by the law, and it must be affirmed.

Was the Brake Company entitled to a preference in equity over the mortgage bondholders in the payment of this note for $12,-316.21 out of the income or out of the proceeds of the mortgaged property? The debt evidenced by that note was due on November 11, 1897. The Brake Company extended its payment until May 17, 1899, 18 months. Receivers were appointed on April 28, 1899. Meanwhile three installments of semiannual interest upon the bonds became due. The mortgage pledged the income as well as the property of the Gulf Company to the payment of the mortgage debt and interest, and contained covenants that the Gulf Company would pay all sums which should "become due and payable and which if left unpaid remain a lien upon said property or any part thereof paramount or superior to the lien of" the mortgage as well as the interest on the mortgage debt, and that, if it failed to do either, the bondholders might seize the property and its income and foreclose the mortgage. This claim of the petitioner was one of those which, if it was incurred within a limited time, approximately six months, before the impounding of the income and property by the bondholders, was secured by an

equitable lien paramount to that of the mortgage. Illinois Trust & Savings Bank v. Doud, 105 Fed. 123, 44 C. C. A. 389, 52 L. R. A. 481. But the class of claims is very limited which may be permitted to displace the contract lien of a prior mortgage, and those who would enforce them must act in good faith and exercise reasonable diligence. The considerations which inspire the decisions of the federal courts upon this question are well expressed by Mr. Justice Brewer in these words in Kneeland v. American Loan Co., 136 U. S. 89, 97, 98, 10 Sup. Ct. 950, 953, 34 L. Ed. 379:

"No one is bound to sell to a railroad company or to work for it, and whoever has dealings with a company whose property is mortgaged must be assumed to have dealt with it on the faith of its personal responsibility, and not in expectation of subsequently displacing the priority of the mortgage liens. It is the exception, and not the rule, that such priority of liens can be displaced. We emphasize this fact of the sacredness of contract liens, for the reason that there seems to be growing an idea that the chancellor, in the exercise of his equitable powers, has unlimited discretion in this matter of the displacement of vested liens."

Mortgage bondholders have the right to the payment by the mortgagor of the current expenses of the operation of the railroad by their debtor with reasonable promptness. The reason that six months is approximately the limited time within which preferential claims must accrue is that there is usually an interval of six months between the dates when installments of interest upon the bonds fall due, and the mortgages generally provide, and the warranted inference is, that, when an installment of interest is paid, current expenses to that time have either been paid, or funds to pay them have been lawfully provided. The failure of the Gulf Company to pay this debt of the petitioner in November, 1897, when it was due, was a violation of the covenant in its mortgage, unless the creditor released its paramount lien, and thus withdrew its claim from the class of claims covered by that covenant from the class entitled to a paramount lien.

The approval of the extensions of the times of payment of preferential claims by agreements between the debtor and the claimants which are not placed of record and are generally unknown to the bondholders and their trustees would enable simple contract creditors to pile up large debts of the mortgagor secured by secret liens paramount to railroad mortgages, would permit them to thus impair the security and to evade the legal effect of the contracts contained in the mortgages, and, by concealing the actual defaults of the mortgagor, would allow them to indefinitely deprive the bondholders of the possession and application of the property to the payment of their bonds and coupons until their security might be practically destroyed. Morgan's Co. v. Texas Central Railway Co., 137 U. S. 171, 196, 11 Sup. Ct. 61, 34 L. Ed. 625; Lackawanna Iron & Coal Co. v. Farmers' Loan & Trust Co., 176 U. S. 298, 316, 20 Sup. Ct. 363, 44 L. Ed. 475; Bound v. South Carolina Ry. Co., 58 Fed. 473, 480, 7 C. C. A. 322, 329; Thomas v. Car Co., 149 U. S. 95, 13 Sup. Ct. 824, 37 L. Ed. 663; Kneeland v. American Loan Co., 136 U. S. 89, 97, 10 Sup. Ct. 950, 34 L. Ed. 379. In Morgan's Co. v. Texas Central Ry. Co., 137 U. S. 171, 196,

11 Sup. Ct. 61, 69, 34 L. Ed. 625, Mr. Chief Justice Fuller, in delivering the opinion of the Supreme Court upon the question whether those who, like the petitioner, assist in the diversion of income to the payment of interest and thereby prevent defaults which entitle the bondholders to the property, may enforce liens paramount to that of the mortgage, said:

"By the payment of interest the interposition of the bondholders was averted. They could not take possession of the property, and should not be charged with the responsibility of its operation. It is true that a railroad company is a corporation operating a public highway, but it does not follow that the discharge of its public excuses it from amenability for its private obligations. If it cannot keep up and maintain its road in a suitable condition, and perform the public service for which it was endowed with its faculties and franchises, it must give way to those who can. Its bonds cannot be confiscated because it lacks self-sustaining ability. To allow another corporation, which for its own purposes has kept a railroad in operation in the hands of the original company, by enabling it to prevent those who would otherwise be entitled to take it from doing so, a preference in reimbursement over the latter on the ground of superiority of equity, would be to permit the speculative action of third parties to defeat contract obligations, and to concede a power over the property of others which even governmental sovereignty cannot exercise without limitation."

The cases in which special circumstances have induced courts to prefer claims which accrued more than six months before the appointment of receivers, and in which extensions of times of payment have not proved fatal, are not out of mind. But those decisions were induced by the peculiar equities of the respective cases, and the fact remains that the general rule is that the time within which claims which are entitled to payment out of the income or proceeds of the mortgaged property in preference to the mortgage debt must accrue is six months preceding the impounding of the income and the seizure of the property by the mortgagees. 23 Am. & Eng. Enc. of Law, 816.

The debt of the petitioner evidenced by the note of $12,316.21 accrued long prior to that limited time within which preferential claims must ordinarily arise. The Brake Company extended the time of payment of this debt for 18 months after it was due, and in that way assisted the debtor to conceal its real default and to keep its property from the possession of the holders of the bonds secured by its first mortgage. The rights of the latter by the express terms of their contract, and in equity, under the judicial discretion of the chancellor, are alike superior to those of the petitioner, and its claim to be preferred to them in its payment of this debt was rightly denied by the master.

The conclusions which have now been reached dispose of this case, and the discussion of other questions presented at the argument cannot now be indulged. The silence of the court, however, is not to be construed as an assent to the proposition that a creditor has an adequate remedy at law which bars him from a suit in equity because he has a cause of action in a state court to foreclose a mechanic's lien (National Surety Co. v. State Bank, 120 Fed. 593, 602, 603, 56 C. C. A. 657, 666, 667, 61 L. R. A. 394; Hooven, Owens & Rentschler Co. v. John Featherstone's Sons, 49 C. C. A.

239, 234, 111 Fed. 81, 86), or that his perfection or enforcement of his mechanic's lien at any time before it is satisfied by payment waives his preferential lien in equity for the same debt.

The decree of the court below must be reversed, and the case must be remanded to the Circuit Court with instructions to enter a decree that the petitioner has a mechanic's lien on the property in the state of Missouri which was owned by the Gulf Company on May 10, 1899, for the sum of $11,271.05, and interest thereon from that date, under the statutes of the state of Missouri, paramount in lien, and superior in equity to the mortgage of April 1, 1893; that the defendant, the Kansas City Southern Railway Company, pay to the petitioner, the Westinghouse Air Brake Company, this amount, together with the costs of this suit, within a reasonable time to be fixed by the court; and that in default of such payment the property be sold to satisfy this demand; and it is so ordered.