GUY T. BISBEE COMPANY v. GRANITE CITY INVESTING COMPANY AND OTHERS.
THE AMERICAN TERRA COTTA & CERAMIC COMPANY, INTERVENER.[1]

May 29, 1924.

No. 23,986.

**Time for filing mechanic's lien not to be extended.**
    1. A materialman who has completed his contract cannot extend the time for filing a lien by thereafter furnishing additional material for the mere purpose of continuing or reviving the lien.

**Time for filing not extended because of unreasonable delay, when.**
    2. After a contract has been substantially completed, delaying to furnish some small item for an unreasonable time for the purpose of keeping the lien in force will not extend the time for filing it.

**Or because of unreasonable delay in replacing defective material.**
    3. The finding that material to replace defective material was furnished for the sole purpose of continuing or reviving the lien and that there was an unreasonable delay in furnishing it, is sustained by the evidence.

Actions in the district court for Stearns county to foreclose a mechanic's lien. The case was tried before Roeser, J., who made findings and ordered judgment in favor of intervener for $17,555, but found that intervener was not entitled to a lien on the property.

[1]Reported in 199 N. W. 17.

From an order denying its motion for amended findings and conclusions or for a new trial, intervener appealed.    Affirmed.

*Rockwood & Mitchell,* for appellant.

*Donohue & Quigley, Barrows & Metcalf* and *Arthur A. Stewart, Oppenheimer, Peterson, Dickson & Hodgson* and *Charles Briggs,* for respondents.

TAYLOR, C.

The Granite City Investing Company began the construction of the Breen Hotel in the city of St. Cloud in June, 1919, and completed it June 1, 1921.   This action to enforce liens filed for material furnished for the building was begun in July, 1921.   The investing company was placed in the hands of receivers November 18, 1921.   The decision of the trial court that certain claims established as valid liens against the property were entitled to priority over the mortgage held by defendant Massachusetts Mutual Life Insurance Company was reviewed and affirmed in Guy T. Bisbee Co. v. Granite City Inv. Corp. supra, page 238, where a more extended statement of the facts will be found.

November 7, 1921, the American Terra Cotta & Ceramic Company filed a statement claiming a lien in the sum of $17,555 for terra cotta furnished for the building, and on November 26, 1921, filed an amended statement.   Thereafter it intervened in this action for the purpose of enforcing its lien.   For convenience it will be designated as the intervener hereafter.   The list of items in the lien statement shows, and it is conceded, that the last item for which a charge is made was furnished August 30, 1920, more than 14 months before the lien statements were filed.   At the bottom of the list of items, and immediately following the item of August 20, 1920, is this statement:

"Replacements on original contract shipped by express 10-3-1921. No charge."

The trial court found that the intervener was entitled to a money judgment against the investing company for the amount of its claim, but was not entitled to a lien on the property for the reason

that its lien statement had not been filed within the statutory time. The intervener appealed from an order denying a new trial.

The intervener contends that shipping the above mentioned "replacements" on October 3, 1921, continued its lien in force, and that it had 90 days thereafter in which to file the lien statement. The receivers contend that this shipment neither continued nor revived the lien.

To understand the controversy over this item, an outline of the facts is necessary. The intervener completed the delivery of the terra cotta on August 30, 1920, and evidently intended to file a lien therefor within the statutory period of 90 days from that date, but was persuaded not to do so by John Hesse, the managing officer of the investing company, who represented that filing the lien would interfere with the closing of a loan for which he was negotiating, and that his company was on the point of securing funds out of which he promised that the claim should be paid. The loan was obtained, but many claims including the intervener's were not paid. On a date which is in dispute, B. S. Goodwin, the district manager of the intervener for the state of Minnesota, went to St. Cloud and had an interview with Hesse in which he dictated, and Hesse signed, the following letter for the purpose of continuing or reviving the lien.

"St. Cloud, Minn. September 29, 1920.
"American Terra Cotta & Ceramic Co.,
    "627 Plymouth Bldg.,
        "Minneapolis, Minnesota.
        "Attention Mr. Goodwin, Dist. Mgr.
"Dear Sir:

We now have all our terra cotta set on the Breen Hotel but find there are a few pieces in the first story piers which are slightly chipped and a little unsightly and wish you would forward about three pieces of typical ashler pieces also about three pieces of the jamb pieces, and oblige.
                "Yours very truly,
                    "Granite City Investing Corporation.
                        "By John Hesse, Sec'y."

The court found that this letter was in fact written in the month of December, 1920, and "was written for the sole and only purpose of effecting, if it would, a revival of the right of lien of this claimant."

The intervener practically concedes that this letter was obtained for the purpose of continuing the lien, but insists that the finding that it was written in December is not justified by the evidence. We find sufficient evidence to sustain the finding, for Hesse testified positively that the letter was written in December, but was dated in September for the purpose of making it appear that these pieces were ordered before the right to file a lien had expired.

Goodwin inclosed this letter in a letter, dated September 30, 1920, to the intervener at its head office in Chicago, in which he wrote:

"Complying with your telephone conversation, I yesterday was in St. Cloud and saw Mr. Hesse regarding this Breen matter and secured from him a signed order for six pieces of terra cotta for the typical piers, first story.

"This will extend our lien right and as to the manufacture of these pieces, of course you understand, that these will not have to be made up. However, we have the order which legally extends our lien rights.

"I feel quite certain within a few days, I will receive a check covering this account."

The terra cotta work in the building was completed and accepted by the supervising architect in the latter part of September or first part of October, 1920. A year later, October 10, 1921, the intervener wrote the investing company:

"We sent you on 3rd inst. by prepaid express one crate containing six pieces terra cotta for the Breen Hotel. The crates were marked 'Remakes for Breen Hotel.'"

These pieces, which are the "replacements" referred to in the lien statement, arrived on October 5, 1921, and were placed in a storeroom in the basement of the hotel by the porter where they remained until the trial. At the trial it developed that the inter-

vener had not shipped the pieces specified in the order, but pieces which could be used only in the second story of the building.

After finding that the order for these pieces was given at the instance of Goodwin for the sole and only purpose of reviving the lien of the intervener, the court further found that the delay in furnishing these pieces was unreasonable, and that the lien had not been revived by any of the foregoing facts, and also found that the lien statement had not been filed within 90 days after furnishing the last item and was void and of no effect. The evidence amply sustains these findings. The record bears out the claim that the parties did not expect that these pieces would be furnished or used, and that procuring this order was merely an attempt to put the intervener in a position where, if it should desire to preserve or revive its lien, it could do so by shipping these pieces.

Whether furnishing material gratuitously for the bona fide purpose of replacing defective material previously furnished and charged for extends the time for filing a lien, is a question on which the courts differ. But they are practically unanimous in holding that a materialman who has substantially completed his contract cannot extend the time for filing his lien by thereafter furnishing additional material for the mere purpose of continuing or reviving the lien. And if he delays furnishing some comparatively small item for an unreasonable length of time after the remainder of the contract has been completed, furnishing it thereafter will not extend the time for claiming a lien. A lien cannot be kept alive by purposely and unnecessarily delaying the completion of the contract in minor and unimportant particulars for that purpose. Flint v. Raymond, 41 Conn. 510; Sanford v. Frost, 41 Conn. 617; Central Trust Co. v. Chicago K. & T. Ry. Co. 54 Fed. 598; Coffey v. Smith, 52 Ore. 538, 97 Pac. 1079; O'Driscoll v. Bradford, 171 Mass. 231, 50 N. E. 628; Dole v. Bangor Auditorium Assn. 94 Me. 532, 48 Atl. 145; Jones v. Balsley & Rogers, 27 Okla. 220, 111 Pac. 942. The decisions of this court, cited by the intervener, are not to the contrary. McCarthy v. Groff, 48 Minn. 325, 51 N. W. 218; Dayton v. Minneapolis R. & I. Co. 63 Minn. 48, 65 N. W. 133; Shaw v. Fjell-

man, 72 Minn. 465, 75 N. W. 705; Minneapolis Trust Co. v. Great North. Ry. Co. 74 Minn. 30, 76 N. W. 953.

The findings of the court being sustained by the evidence and justifying the conclusions of law, the order appealed from is affirmed.