# DUININCK BROS. & GILCHRIST v. BRANDONDALE CHASKA CORPORATION AND OTHERS.

248 N. W. 2d 743.

December 17, 1976—No. 46236.

*Green & Merrigan* and *Kenneth W. Green,* for appellants.

*Willette, Kraft, Walser & Nelson* and *DePaul D. Willette,* for respondent.

Heard before Kelly, Yetka, and Scott, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This is an appeal from a judgment entered on a mechanics lien foreclosure proceeding. The Carver County District Court found a valid mechanics lien of $75,193.14 in favor of Duininck Brothers & Gilchrist (Duininck) upon the property of Brandondale Chaska Corporation (Brandondale). The court also determined that the lien had priority over a mortgage on the property held by Home Federal Savings and Loan Association (Home Federal). Brandondale and Home Federal challenge these findings; Brandondale contends also that the court erred in dismissing its counterclaim against Duininck and seeks remand for trial of issues raised by that claim.

The case presents the following issues:

(1) Did the trial court err in imposing a lien on more than one acre of Brandondale's property?

(2) Was the trial court correct in finding that the lien of Duininck was prior to the mortgage of Home Federal?

(3) Does the evidence support the trial court's conclusion that Duininck's performance was satisfactory under the contract and did not breach an implied warranty of good workmanship?

■ The lien granted by the district court covered some 90 acres of Brandondale's property. This property is situated within the incorporated limits of the city of Chaska. Brandondale asserts that this exceeds the court's authority as defined by Minn. St. 1971, § 514.03, which sets limits upon the amount of property subject to a mechanics lien:

"If the contribution be made under a contract with the owner and for an agreed price, the lien as against him shall be for the sum so agreed upon; otherwise, and in all cases as against others

than the owner, it shall be for the reasonable value of the work done, and of the skill, material, and machinery furnished. It shall extend to all the interest and title of the owner in and to the premises improved, not exceeding 40 acres in area if situated outside the limits of an incorporated city or village, and not exceeding one acre if within such limits."[1]

This provision is clear and unambiguous; it limits mechanics liens to one acre on property located within city limits. This limitation, contrary to Duininck's assertion, is upon the subject-matter jurisdiction of the court and cannot be waived. As this court has often stated, mechanics liens are purely statutory in nature, and the jurisdiction of our courts in this area is thus strictly governed by the statutes.

The trial court in this case clearly exceeded its statutory jurisdiction. The mechanics lien should have been limited to one acre of Brandondale's property improved by Duininck.

■ Duininck began work on Brandondale's property in July 1971. In December of that year, while Duininck's work had ceased temporarily for the winter, Home Federal recorded its real estate mortgage against the property. Duininck's work resumed in the spring; the lien herein is for work performed subsequent to the mortgage.

This court has examined the problem of intervening mortgages in two prior cases: Kahle v. McClary, 255 Minn. 239, 96 N. W. 2d 243 (1959), and New Prague Lbr. & Readi-Mix Co. v. Bastyr, 263 Minn. 249, 117 N. W. 2d 7 (1962). In Kahle, two heating installations were made in a building one year apart,

---

[1] The size limitation provided in Minn. St. 1971, § 514.03, was amended by L. 1973, c. 247, § 3, to read: "Subd. 3. The lien shall extend to all the interest and title of the owner in and to the premises improved, not exceeding 40 acres." The limitation to one acre within a city was thus eliminated, but this amendment also provided that it applied only to "contracts for improvements entered into by the owner after January 1, 1974, at 12:01 A. M." Since the contract herein was entered into in July 1971, the amendment is inapplicable to this case.

between which a mortgage on the premises was recorded. The lien was filed within 90 days after the second installation. We established the following method of analysis for deciding priority:

"* * * If the subsequent installation of the hot air register is an operation continuous with that of the furnaces, the lien is good. If the two operations are separate or independent, the lien has expired. * * * The factor determining whether two operations are continuous, or separate and independent, is the general purpose of the contract." 255 Minn. 240, 96 N. W. 2d 245.

Later in the case we noted:

"* * * It is obvious that if the additional labor must be performed under the terms of the original contract regarding the general purpose, the lien is still in existence." 255 Minn. 242, 96 N. W. 2d 246.

In Kahle we found that the general purpose of the contract was "adequate heating," that the second item of work was necessary to accomplish this purpose, and hence that the lien was superior to the mortgage. 255 Minn. 242, 96 N. W. 2d 246.

The New Prague Lumber case involved a situation where additional materials were furnished 5 months after completion of the work originally contemplated, during which time a mortgage was recorded. We held that the materials were "properly considered as furnished under a new and independent contract," leading to the conclusion that the intervening mortgage was superior to the lien. 263 Minn. 253, 117 N. W. 2d 10.

The evidence in this case shows that under the Kahle criterion the lien must be found superior to the mortgage. The contract between Duininck and Brandondale contemplated earth moving, grading, and bituminous surfacing for the entire project. Work was halted in November 1971 because such work could not continue through the winter; it was resumed in May 1972 when ground thaw permitted. There was no evidence that more than

one contract was intended, and all work performed by Duininck was pursuant to the original contract.

The finding of the trial court of a severable contract does not require a different result. Whether or not the contract was severable, it was not terminated until August 1972, when all work which forms the basis of the lien herein was completed. The fact remains that performance pursuant to the original contract continued uninterrupted except for the temporary weather break until Brandondale requested Duininck to discontinue the project. Under these circumstances the severability of the contract does not affect the priority issue.

■ Brandondale raised the quality of Duininck's performance as both a defense to the lien and as a basis for its counterclaim, which was dismissed by the trial court. It asserts that the findings made by the trial court were unsupported by the evidence and were insufficient to decide the issue.

The trial court made a number of factual findings bearing on whether Duininck's performance was satisfactory under the contract. Taken together these findings indicate that, while there were unquestionably construction problems which arose following Duininck's performance, these problems were in part attributable to Brandondale and could not be charged solely to alleged faulty performance by Duininck. The trial court decided that, on balance, Brandondale bore the greater responsibility for these problems, and hence held the lien valid and dismissed the counterclaim. The evidence does not show that this conclusion is clearly erroneous. We therefore affirm the trial court in part, but reverse and remand for the specific purpose of applying the lien of Duininck to one acre of Brandondale's property.

Affirmed in part; reversed in part and remanded.