HAYLE FLOOR COVERING,
INC., Respondent,

v.

FIRST MINNESOTA CONSTRUCTION
COMPANY, et al., Defendants,

Stern Drywall, Inc., Respondent,

M & N Builders, Respondent,

Minnesota Valley Surfacing Co.,
etc., Respondent,

Schutz Contracting Co., Inc., Respondent.

METRAM PROPERTIES COMPANY,
defendant and third party
plaintiff, Respondent,

v.

CAPITOL INDEMNITY CORPORATION,
third party defendant and fourth party
plaintiff, Appellant,

Larry Hork, et al., fourth party defend-
ants, Respondents-Appellants,

Roger Beyer, et al., Fourth
Party Defendants.

Nos. 46460, 46523 and 47172.

Supreme Court of Minnesota.

April 22, 1977.

Rehearing Denied May 23, 1977.

Lang & Pauly and David H. Gregerson, Minneapolis, for appellants.

Robert F. Collins, So. St. Paul, for Hayle Floor.

Bernard Harroun, Minnetonka, for Stern Drywall.

George Seltz, Minneapolis, for M & N Bldrs.

Howard J. Groves, Burnsville, for Minn. Valley Surf. Co., etc.

Christian & Gross and Edward M. Christian, Bloomington, for Schutz.

Karlins, Grossman, Karlins, Siegel & Brill and Robert L. Lowe, Minneapolis, for respondents.

Douglas, Jaycox, Trawick & McManus, Minneapolis, for Hork, et al., respondent-appellant.

Heard before ROGOSHESKE, PETERSON, and SCOTT, JJ., and considered and decided by the court en banc.

## PER CURIAM.

These appeals arise out of a mechanics lien foreclosure action brought by Hayle Floor Covering, Inc., a subcontractor in the construction of an apartment building owned by defendant Metram Properties Company. Four other subcontractors filed answers asserting mechanics liens. Defendant First Minnesota Construction Company was the general contractor on the contract with Metram. Metram commenced a third-party action against Capitol Indemnity Corporation, which was the surety for the project having issued a labor and materials bond and a performance bond with Metram as obligee and First Minnesota as principal. Capitol then brought a fourth-party claim against Larry and Ollie Hork and four other individuals who had signed general agreements to indemnify Capitol for losses sustained by reason of Capitol's becoming surety for First Minnesota.

The district court found as facts that each mechanics lien was valid against Metram, that the liens were proper claims under Capitol's surety bond, that the Horks were individually liable for Capitol's losses as surety for First Minnesota, and that the remaining fourth-party defendants were in default. As a matter of law the district court found that all liens had priority over a mortgage on the property held by the Federal National Mortgage Association. The court ordered foreclosure of the liens, held Capitol liable to Metram for the amount of the liens, and held all fourth-party defendants liable to Capitol in the same amount.

On appeal, both Metram and Capitol dispute the validity and amounts of the liens. Capitol asserts that the liens are outside the scope of its bond, while the Horks raise a timeliness issue regarding Capitol's fourth-party claim. Each lien and the third- and fourth-party claims will be considered separately.

### Lien of Hayle Floor Covering, Inc.

The lien of Hayle is for additional carpet and labor needed to complete the job beyond the amount specified in its subcontract. The shortage arose due to a scaling error in the blueprints which were relied upon by Hayle in making its bid.

The lien of Hayle must be upheld for two reasons. First, Hayle placed the additional carpet pursuant to written authorization by the general contractor. In Minnesota this is sufficient to imply the consent of the owner for the additional work. *Karl Krahl Excavating Co. v. Goldman*, 296 Minn. 324, 208 N.W.2d 719 (1973); see generally, 53 Am.Jur.2d, Mechanics Liens, § 114, pp. 635, 636. Second, where a contractor performs according to the plans and specifications supplied him, he is not responsible for defects in those plans and specifications. *United States v. Spearin*, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166 (1918). The shortfall in Hayle's estimate resulted from the scaling error and its reliance thereon was justified under the circumstances. The evidence adequately supports the trial court's finding of a lien in Hayle's favor for $8,504.93.

### Lien of Minnesota Valley Surfacing Company

Minnesota Valley was under contract with First Minnesota to perform blacktopping for the apartment project. Its lien is for extra materials necessitated by the removal of wet, unstable soil from the project site by First Minnesota, a condition not foreseen by Minnesota Valley in preparing its bid.

No written authorization of payment for the extra materials was offered at trial by Minnesota Valley. The contract between Minnesota Valley and First Minnesota states in Subsection XIII that "no extra work shall be allowed or changes made by the Sub-Contractor, or paid for by the Contractor UNLESS AND UNTIL AUTHORIZED BY THE CONTRACTOR OR HIS AUTHORIZED REPRESENTATIVE IN WRITING BEFORE THE WORK AND/OR CHANGES ARE BEGUN." In Minnesota, as in most jurisdictions, the rule is that while extrinsic evidence may be admissible to clarify ambiguous terms in a written contract, it is not admissible to vary terms whose meaning is plain. *In re Trust Known as Great Northern Iron Ore Properties,* Minn., 243 N.W.2d 302 (1976). Further, the terms of a written agreement can only be altered by parol evidence which is clear and convincing. *Wertheimer v. Byrd,* 278 Minn. 150, 153 N.W.2d 252 (1967). In this case neither condition is satisfied. The contract provision requiring written change orders is unambiguous—in fact, it is the only capitalized subsection of the entire contract. The only testimony tending to establish oral authorization for the work is that of Stuart Dittbrenner, office manager of Minnesota Valley. His testimony on this issue cannot be read as clear and convincing. Hence, there is insufficient evidence supporting the trial court's finding of a lien in favor of Minnesota Valley, and the trial court must be reversed.

### Lien of Stern Drywall, Inc.

Stern Drywall was under contract with First Minnesota to install gypsum drywall and insulation in the project. Stern's subcontract contained an "in writing" provision for extra work identical to that quoted above.

At trial Stern introduced evidence of two written change orders, one for $1,320 and one for $1,206. A number of other extras were also claimed by Stern on the basis of an exhibit and the testimony of Lorin Stern, president of the company, as to oral authorizations. The trial court granted a lien for $2,823.30, which included all the claimed extras, whether authorized in writing or not. The evidence also showed that Stern had been paid $773.70 in excess of the basic contract price of $120,000.

For the same reasons given above with respect to Minnesota Valley, the amount of Stern's lien must be reduced. Written authorization was proved for $2,526 in extras, from which must be subtracted the $773.70 to arrive at a valid lien of $1,752.30. The evidence supports the trial court's finding only to that extent, requiring a reduction of its judgment in favor of Stern.

### Lien of Schutz Contracting Co., Inc.

Schutz Contracting was under contract for excavation and water and sewer work on the project, and had two subcontracts identical in all relevant respects with those of Hayle, Minnesota Valley, and Stern.

The Schutz lien claim involves a complex pattern of extras and retainages totaling $14,472.56 for both contracts. The district court allowed the lien in the full amount, although only one written change order for $3,896.65 was introduced at trial.

The Schutz lien must be denied as being untimely filed. The lien statement itself claims November 24, 1971, as the last day of work on the project; the lien was filed on January 13, 1972. The evidence at trial, however, shows that on November 24 Schutz only moved equipment and materials belonging to First Minnesota, which was moving to another jobsite. No work was done on that day which pertained to Schutz' excavating or sewer and water contracts; in fact, a Schutz invoice to First Minnesota dated October 5, 1971, indicates that the

contract work was 100 percent complete as of that day. In the absence of evidence showing that contract work was performed by Schutz beyond that date, it must be taken as the final day of work for purposes of Minn.St. 514.08.[1] Incidental work not relating to the project itself, such as the moving of equipment and materials not belonging to the owner, is not sufficient to satisfy the mechanics lien statute. Cf., *Anderson v. Breezy Point Estates*, 283 Minn. 490, 168 N.W.2d 693 (1969); *Kahle v. McClary*, 255 Minn. 239, 96 N.W.2d 243 (1959). The Schutz lien was therefore filed beyond the 90-day limit and must be held invalid.

### Lien of M & N Builders

■ M & N Builders had an oral contract with Hayle to install cabinets and countertops in the Metram project. Hayle had a written contract with First Minnesota to install these units at a total price of $5,280. Mr. Charles Norton, vice president of M & N, testified that M & N was to be paid by Hayle a total of $3,960, or $30 times 132 units. He further testified that M & N had been paid $1,800, thus arriving at the lien amount of $2,160. The trial court found the lien valid in this amount.

Hayle's contract with First Minnesota for the cabinets expressly prohibits subletting without the written consent of the contractor.[2] No evidence of written consent by First Minnesota to the oral assignment was introduced at trial; Norton of M & N testified he had never seen a written assignment. While the oral contract alleged by M & N and not denied by Hayle is probably sufficient for M & N to recover from Hayle for the work it performed, it does not warrant shifting this liability to Metram

through First Minnesota, which did not consent in writing to the assignment. M & N must look to Hayle for payment—the oral contract between these two will not support the lien found by the trial court.

### Third-party Claim of Metram

The trial court held Capitol liable to Metram for the amount of all valid liens, based upon the labor and materials bond issued by Capitol. Capitol challenges this finding on a number of grounds regarding the bond itself, and at the same time disputes the validity of the liens themselves. Since the liens have already been dealt with, we proceed directly to the issues surrounding the bond.

■ First, Capitol argues that Metram's suit on the bond was untimely filed. Condition 3 of the labor and materials bond provides that suits by "claimants" under the bond must be commenced within 1 year "following the date on which the Principal [First Minnesota] ceased work." First Minnesota ceased work in early August 1971, while Metram's suit against Capitol was not commenced until March 28, 1974. It is clear, however, that Metram is not a "claimant" under the bond, which defines "claimant" in Condition 1 to be "one having a direct contract with the Principal or with the Principal or with a subcontractor of the Principal for labor, material, or both." This phrase intends application to those who are to be paid by First Minnesota for work done or materials supplied, i. e., subcontractors, and cannot be construed as covering Metram, whose position is just the reverse. The general limitation statute, Minn.St. 541.05,[3] therefore applies to the bond as a

---

1. Minn.St. 514.08, subd. 1, reads in part as follows: "The lien shall cease at the end of 90 days after doing the last of such work, or furnishing the last item of such skill, material, or machinery, * * *."

2. Subsection X reads in relevant part that the subcontractor agrees: "Not to assign or sub-let this Sub-Contract or any part thereof * * * without first obtaining the written consent of the Contractor thereto."

3. Minn.St. 541.05 reads as follows in pertinent part: "Except where the uniform commercial code otherwise prescribes, the following actions shall be commenced within six years:

"(1) Upon a contract or other obligation, express or implied, as to which no other limitation is expressly prescribed."

contract between Metram and Capitol; Metram's suit was filed well within the 6-year limit of this provision.

■ Capitol next argues that Metram cannot bring suit solely on the basis of its obligee status under the bond. Capitol cites no authority for this proposition, and in fact the authorities are to the contrary. See, 17 Am.Jur.2d, Contractors' Bonds, § 14; 11 C. J. S., Bonds, § 106a. If the obligee on a bond could not sue to enforce it, and the "claimants" under the bond choose to lien the obligee's property rather than sue on the bond, the surety's obligation becomes illusory. We hold that an obligee is a proper party to enforce the surety's bond obligation.

■ Capitol asserts that because the liens (except for that of M & N) are for extras, they fall outside the scope of its obligation as surety. The general rule is that "where changes merely require the contractor to perform some additional work without materially changing the original plans, the surety is not thereby relieved from liability under the contract." 72 C. J. S., Principal and Surety, § 126b; see also, 74 Am.Jur.2d, Suretyship, § 45; Leslie, *Deviations in Re-Let Contract Do Not Discharge Surety Where Right of Change Was Reserved*, 10 The Forum, 37, 39. In this case the extra carpet installed by Hayle and the extra drywall work by Stern did not materially deviate from the original contract. The total of both liens approximates $10,000, while the overall contract for the project was about $2,000,000. Further, the carpet and drywall were both items originally in contemplation of the parties, and did not represent unnecessary changes in the overall project. Under these circumstances, the liens for these items cannot be said to fall outside the scope of Capitol's obligation.

Capitol contends that should it be required to compensate Metram for valid lien claims, it is entitled to a setoff for retainages of contract moneys by Metram. The evidence indicates that although Metram appears to have retained $8,266.23, only $49.07 of this sum is due Hayle and $4,494.16 is due Schutz. Since we have found the Schutz lien untimely filed, Capitol is entitled only to a $49.07 setoff against the total of the Hayle and Stern lien claims.

None of the defenses raised by Capitol is sufficient to relieve it from liability to Metram for the valid lien claims. The district court finding of liability is affirmed, but its judgment on this claim is reduced to $10,257.23 in lien claims, plus $2,392.86 in fees and costs to Hayle and Stern, less a setoff of $49.07 for the contract retainage, for a total of $12,601.02.

Fourth-party Claims of Capitol

■ As noted above, of the fourth parties only Larry and Ollie Hork have appealed the judgment below—the remaining fourth parties are in default, not having responded to the complaint against them. The only defense raised by the Horks is one of timeliness of Capitol's fourth-party claim under Rule 14.01, Rules of Civil Procedure. This rule requires service of a third-party complaint within 45 days of service of the original complaint, but its extension to the fourth-party context is obvious. Metram served Capitol with its third-party complaint on March 28, 1974, and Capitol did not serve the Horks with a fourth-party complaint until May 24, 1974, 57 days later. The Horks did not file an answer to this complaint, but handed an answer to the trial judge at the time of trial.

■ The Horks first argue that failure to comply with the time limit of Rule 14.01 raises a jurisdictional question. As is specifically stated by Rule 82, however, the rules of procedure do not "extend or limit the jurisdiction of the district courts." Rule 14 in particular is designed to prevent multiple litigation over issues which properly belong in a single case, and its time limitation provision is intended to prevent undue delay or unfairness caused by bringing in third parties at a late stage in the litigation. Lack of compliance with the

rule may under some circumstances require severance of the third-party claim, but does not deprive the court of jurisdiction over the parties.

■ In any event it must be said that the Horks effectively waived their right to raise this defense by not filing responsive pleadings until trial, some 9 months after service of the fourth-party complaint upon them. The district court's finding of liability of all fourth parties is affirmed, but its judgment is reduced to $12,601.02 (Capitol's liability to Metram) plus $3,066 fees and costs, for a total of $15,667.02.

## Summary

(1) The district court is reversed with regard to the liens of Minnesota Valley, Schutz, and M & N.

(2) The district court is affirmed as to the Hayle lien; it is affirmed as to the validity of the Stern lien to the extent of $1,752.30.

(3) The district court is affirmed as to the liability of Capitol to Metram, but its judgment is reduced to $12,601.02.

(4) The district court is affirmed as to the liability of all fourth parties to Capitol, but its judgment is reduced to $15,667.02.

Affirmed in part, reversed in part, with instructions to enter judgment accordingly.

TODD, J., took no part in the consideration or decision of this case.