**ENVIRO–FAB, INC., Respondent,**

v.

**BLANDIN PAPER COMPANY, Appellant.**

**No. C8–83–1332.**

Court of Appeals of Minnesota.

May 22, 1984.

Steven Fecker, Lano, Nelson, O'Toole & Fecker, Grand Rapids, for respondent.

Floyd D. Rudy and Frank Yetka, Rudy, Provost & Seitz, Cloquet, Robert Kay and Mark Williamson, Geisler & Kay, S.C., Madison, Wis., for appellant.

Heard, considered and decided by POPO-VICH, C.J., and FORSBERG and RAN-DALL, JJ.

## OPINION

RANDALL, Judge.

This appeal arises from a mechanic's lien action. Appellant property owner appeals from a judgment, an amended judgment, and an order denying its motion for a new trial. The trial court allowed the subcon-

tractor to foreclose on its lien claim, then denied property owner's motion for a new trial. The appellant contends (1) the record does not support the trial court's findings that the lien statement was timely filed and the lien foreclosure action was timely commenced; (2) the trial court improperly denied the contractor's setoff claim; (3) the trial court's findings about the reasonable value of the services for a clarifier are not supported by the evidence; (4) the trial court abused its discretion in awarding attorney's fees to the prevailing lien claimant; and (5) the trial court improperly denied appellant's request to post a surety bond in lieu of cash to release the lien and serve as a supersedeas bond for appeal purposes. **We affirm on all issues.**

## FACTS

Blandin Paper Company sought bids for the construction of a fuel conversion and cogeneration facility at its Grand Rapids, Minnesota, plant. Azco, Inc., was interested in being the general contractor. Azco contacted Tom Bliznik, sales manager for Enviro-Fab, Inc. (EFI) regarding a subcontract for a fly ash silo, a required pollution control device for Blandin's new facility. Bliznik gave a tentative telephone quote of $46,500 and also discussed the fabrication of miscellaneous shop tanks with Azco.

Following Azco's successful bid of the mechanical contract, at $3,040,383, Azco's project engineer, George Chapman, advised Bliznik of its award and also discussed EFI's erection of a clarifier and fabrication of seven shop tanks. Upon receipt of the drawings and specifications, and following extended negotiations, EFI agreed to fabricate the seven tanks for $29,000 and to erect the fly ash silo for $42,000 and the clarifier for $34,000. The drawings were returned to Azco.

EFI delivered the seven tanks to Azco in early 1980 and was paid the $29,000 contract price. EFI completed the erection of the clarifier on time but was not paid. Its last work on the clarifier was on June 24, 1980.

The fly ash silo erection posed problems. The work date was set back to August 18, 1980 because of a union jurisdictional dispute. This delay added to EFI's costs. There was a further delay in sending EFI the original drawings for comparison with the working drawings. EFI's examination of the working drawings disclosed substantial changes from the original drawings, necessitating considerably more work. Azco insisted that EFI proceed with the erection and work out the extra charges later. EFI insisted that Azco approve the extra charges before it began work. Following numerous unsuccessful communications between the parties, on September 15, 1980, Azco repudiated and terminated the contract. Azco then hired the L.H. Sowles Company to complete the fly ash silo for about $90,000.

EFI decided to file a mechanic's lien for the unpaid work on the clarifier. On September 10, 1980, EFI received a request from Azco or Blandin for a gasket needed on one of the fabricated tanks that had already been built. The gasket was delivered on September 16, 1980. EFI filed its mechanic's lien statement on November 7, 1980, and commenced its action to foreclose on the lien on September 16, 1981.

The trial court concluded EFI's lien statement was timely filed and its foreclosure action was timely commenced. It awarded EFI $34,578.75 (plus interest) and $11,766.87 attorney's fees. Both parties, at one point, had agreed on the figure of $34,578.75 as the claim. Azco initially refused to pay, not on the merits of the figure, but based on their alleged right to a setoff claim. In denying Blandin's motion for a new trial, the trial court amended its judgment by stating the $34,578.75 was a reasonable value for the work EFI performed on the clarifier. The court also ordered that Blandin could not post a surety bond to release the lien and that a cash deposit was required which could also serve as a supersedeas bond for appeal purposes.

## ISSUES

1. Does the record support the trial court's findings that the lien statement was timely filed and the lien foreclosure action was timely commenced?

2. Did the trial court improperly deny Azco's setoff claim?

3. Is the trial court's finding that $34,-578.75 was a reasonable value for the clarifier work supported by the evidence?

4. Did the trial court abuse its discretion in awarding $11,766.87 attorney fees to EFI?

5. Did the trial court improperly deny appellant's request to post a surety bond in lieu of cash to release the lien and serve as a supersedeas bond for appeal purposes?

## ANALYSIS

### I

■ Under our mechanic's lien law, a lien claimant must file its statement within 90 days after doing the last work or furnishing the last materials. Minn.Stat. § 514.08, Subd. 1 (1982); *Lesmeister v. Dilly,* 330 N.W.2d 95 (Minn.1983). The mechanic's lien is to "protect those who furnish material or services for the improvement of another's property * * *." *Giullaume & Associates, Inc. v. Don-John Co.,* 336 N.W.2d 262, 263 (Minn.1983). Our statute is strictly construed on whether a mechanic's lien attaches, but liberally construed after the lien has been created. *Dolder v. Griffin,* 323 N.W.2d 773, 780 (Minn.1982). The appellant argues that EFI's furnishing of a gasket for a steel tank on September 16, 1980, cannot be considered the last work since the lien is for the work on the clarifier. The appellant contends that the tank jobs were separate from the clarifier and fly ash silo jobs.

The trial court found the parties intended a single unitary contract of $105,000. Thus, even though the last work on the clarifier was performed on June 24, 1980, the November 7, 1980, filing was timely because it was within 90 days of the September 16, 1980, gasket delivery.

■ On review, the trial court's findings will not be disturbed unless clearly erroneous. Rule 52.01, Minn.R.Civ.P.; *Duininck Bros. & Gilchrist v. Brandondale Chaska Corp.,* 311 Minn. 291, 248 N.W.2d 743 (1976). Where the evidence is partly oral and partly written, and where the written evidence does not render the credibility of the oral testimony extremely doubtful, an appellate court should defer to the trial court's assessment of the evidence. *Anda Construction Co. v. First Federal Savings & Loan Association,* 349 N.W.2d 275 (Minn.App.1984). *See In Re Trust Known as Great Northern Iron Ore Properties,* 308 Minn. 221, 225–26, 243 N.W.2d 302, 305–06, *cert. den. sub. nom., Arms v. Watson,* 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976). Only if the reviewing court is left with the firm conviction a mistake has been made will the findings be held to be clearly erroneous. *Id.*

■ It is well settled that when labor and material are furnished for one project, the lien attaches from the date of the last item furnished. *American Bridge Co. v. Honstain,* 120 Minn. 329, 139 N.W. 619 (1913). *See Rochester's Suburban Lumber Co. v. Slocumb,* 282 Minn. 124, 163 N.W.2d 303 (1968); *Barrett v. Hampe,* 237 Minn. 80, 53 N.W.2d 803 (1952).

> If the work being done is one continuous work constituting one job, though there are several agreements for the furnishing of different materials, each being a separate contract for some part of the general work, a lien claim filed within 90 days after the last item preserves a lien for all. (Citations omitted) If the contracts are separate and distinct and unrelated, not in connection with a continuous work or job, a lien claim filed does not preserve a lien upon materials furnished prior to the 90 days

*Paine & Nixon Co. v. Dahlvick,* 136 Minn. 57, 58, 161 N.W. 257 (1917).

■ Our review of the record supports the trial court's findings. All agreements were contemplated at the same time and were not an afterthought. Each agreement was bargained for and benefited appellant as well as respondent. *See New Prague Lumber & Readi-Mix Co. v. Bastyr*, 263 Minn. 249, 117 N.W.2d 7 (1962). The contract price of $105,000 covered the tanks, clarifier and silo. The entire project was related and in connection with the main Blandin-Azco contract. Both Azco and EFI assigned one job number for the entire project, although Azco internally separated the erection of the fly ash silo and clarifier from the tank fabrication because the tanks involved material, while the other two projects involved on-site labor.

Appellant places primary emphasis on the fact that a "subcontract agreement" was executed covering the clarifier and silo, and a "purchase order" was used for the tanks. However, this does not prove two completely separate transactions were made. Rather, the evidence supports the view the subcontract here was severable. *See Duininck Bros. & Gilchrist v. Brandondale Chaska Corp.*, 311 Minn. 291, 248 N.W.2d 743 (1976).

■ Appellant also contends the gasket was sent on September 16, 1980, solely to extend the time for filing a lien. It is true a lien period cannot be extended by the intentional and unilateral providing of a minor incidental item. *Hayle Floor Covering v. First Minnesota Construction Co.*, 253 N.W.2d 809 (Minn.1977); *Guy T. Bisbee Co. v. Granite City Investing Co.*, 159 Minn. 442, 199 N.W. 17 (1924). However, the trial court found EFI sent the gasket in good faith and not to extend the filing time. That finding is supported by the record. When EFI began considering the need for a mechanic's lien claim, it still had about 50 days to file its lien statement. Respondent had no need to send a gasket on September 16, 1980, to extend the time, since there still was sufficient time in which to file.

■ Having decided the trial court properly determined September 16, 1980, was the last date material was furnished, we reject appellant's contention the lien foreclosure action was not timely commenced. Minn.Stat. § 514.12, subd. 3 provides that "no lien shall be enforced in any case unless the holder thereof shall assert the same * * * within one year after the date of the last item of his claim as set forth in the recorded lien statement * * *." This foreclosure action was commenced September 16, 1981, and was timely.

## II

Appellant contends because EFI wrongly failed to erect the fly ash silo, it cost Azco more to erect the silo than it owes EFI for the clarifier. Under appellant's setoff theory, EFI's lien claim should be dismissed for this reason.

The trial court found because of substantial changes in the work, EFI was justified in refusing to do them until a written change order was submitted. The court stated any additional expenses incurred by Azco were caused "solely by its breach of its contract with Enviro-Fab and are not a proper setoff against Enviro-Fab's claim."

■ The record supports the trial court's decision. Articles 11.9 and 11.10 of the Azco-EFI subcontract provide EFI must be ordered in writing to make changes consisting of additions, deletions or other revisions. Prior to the commencement of the revised work, EFI was required to submit promptly to Azco written claims for adjustment to the price. However, this was impossible because EFI was unable to determine what changes had been made by Azco and what the added costs were due to Azco's failure to provide EFI with the original drawings in a timely manner. If EFI would not have submitted its added charges promptly, it could have waived its rights under the subcontract. *Buchman Plumbing Co., Inc. v. Regents of University*, 298 Minn. 328, 215 N.W.2d

479 (1974); *Lundstrom Construction Co. v. Dygert,* 254 Minn. 224, 94 N.W.2d 527 (1959).

Under Article 10.1 of the Blandin-Azco general contract, and Article 9.8.11 of the supplementary conditions, changes must be authorized by a change order; if involving a price adjustment, the changes are not to be performed without a change order. These provisions are applicable to the Azco-EFI subcontract under Article 6.11 of the general contract, and Section 11.1.1 of the subcontract. No change order was ever submitted to EFI. Thus, we agree with the trial court that any additional expenses incurred by Azco were caused by its own breach and are not a proper setoff against EFI's claim.

In addition, substantial, material and costly changes between the job bid and the actual work may relieve a party from performance. *See Stanton v. Morris Construction Co.* 159 Minn. 380, 199 N.W. 104 (1924). Appellant argues that allowing EFI to withhold all work if a price agreement for extra work could not be arrived at in advance is unjust because it allows subcontractors to make up for a low initial bid by holding up work. This argument is unpersuasive since appropriate contractual provisions could be inserted which would apply to this contingency. Further, every party has a duty of good faith and fair dealing in its performance. Restatement (2d) *Contracts,* § 205 (1981). A subcontractor cannot legally act in bad faith as the appellant presupposes.

### III

The next issue raised by appellant is whether the trial court's finding that the services for the clarifier work were worth $34,578.75 is reasonably supported by the evidence.

Minn.Stat. § 514.03, subd. 1 (1982) specifies the extent of the lien. Under subsection (b), the lien is for "the reason-able value of the work done, and of the skill, material, and machinery furnished." The contract price is *prima facie* evidence of the reasonable value of the improvement. *Northwestern Lumber & Wrecking Co. v. Parker,* 125 Minn. 107, 145 N.W. 964 (1914); *Leeds v. Little,* 42 Minn. 414, 44 N.W. 309 (1890). The contract price may be rebutted by a showing that it is "so exorbitant and unreasonable as to indicate fraud, mistake or the like * * *." *Leeds,* 42 Minn. at 416, 44 N.W. at 309.

Appellant argues it rebutted the $34,578.75 contract price by showing that the direct labor costs were only $7,900. However, appellant's figure does not include construction overhead, covering the construction manager's costs (office, travel, supplies, clerical and rental expenses). EFI also included general overhead for its plant, sales force, estimators, building, and depreciation. Finally, profit must be considered. The statute does not just specify recovery of direct labor costs; it allows for the recovery of the reasonable value of the work done and of the skill furnished. It is fair to include costs for overhead and an allowance for profit. The trial court's findings were reasonably supported by the evidence.

### IV

Appellant challenges the award of $11,766.87 attorney's fees to EFI. Minn. Stat. § 514.14 (1982) allows the prevailing lien claimant to recover "costs and disbursements." Attorney's fees are also recoverable. *Larson-Roberts Electric Co. v. Burdick,* 267 Minn. 486, 127 N.W.2d 163 (1964). Appellant has not presented any compelling reason in support of its view that the trial court abused its discretion in this regard and we find none in the record.

### V

The final claim of appellant is that the trial court improperly denied its request to post a surety bond in lieu of cash to release

the lien and serve as a supersedeas bond under Rule 108, Minn.R.Civ.App.P. The trial court required the appellant to post $60,000 cash. The procedure for releasing a lien after a lien foreclosure action has been brought is specified in Minn.Stat. § 514.10 (1982). This statute provides, in part:

> [T]he court shall fix a sum of money to be deposited by the applicant with the clerk of the district court, which sum shall not be less than the aggregate amount of, (1) the amount claimed in the lien statement * * *. Upon making a deposit in the amount so fixed in the order of court, an order shall be made by the court releasing the premises described in the statement thereof from the effect of such lien.

> After the release of the property affected, the judgment * * * shall be paid without further proceedings out of the deposit made as provided herein * * *

 Some states have provisions in their statutes allowing for the release of a mechanic's lien on the filing of an approved bond. 53 Am.Jur.2d *Mechanic's Liens* § 316 (1970). Our Minnesota statute has no such provision. Appellant could not cite any Minnesota case law allowing the posting of a bond to release a mechanic's lien. We find no error in the trial court denying appellant's request to post a surety bond in lieu of a cash deposit to release the lien. The court did allow the cash deposit to also serve as a supersedeas bond, and this was fair to appellant.

### DECISION

The trial court's findings that respondent's lien statement was timely filed and its foreclosure action was timely commenced are supported by the record. Azco's setoff claim was properly denied because its additional expenses were incurred as a result of its own breach of contract. The record supports respondent's claim of $34,578.75 for erecting the clarifier because it is entitled to recover the reasonable value of the work done and of the skill furnished, not just its direct labor costs.

No abuse of discretion has been shown in awarding respondent its entire attorney's fees. Finally, the trial court properly denied appellant's request to post a surety bond in lieu of a cash deposit to release the lien.

Affirmed.