Alonzo WINGEN, Appellant,

v.

BLUE EARTH COUNTY, Respondent.

No. C5–87–910.

Court of Appeals of Minnesota.

Nov. 24, 1987.

Brian D. Roverud, Frundt, Frundt, Johnson and Roverud, Ltd., Blue Earth, for appellant.

Charles T. Peterson, McLean Peterson Law Firm, Mankato, for respondent.

Heard, considered and decided by SEDGWICK, P.J., and PARKER and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Appellant, Alonzo Wingen, brought suit against respondent Blue Earth County seeking $3,705 in compensatory damages and injunctive relief ordering respondent to repair damage to appellant's property caused by the construction of a ditch through his property. The court denied injunctive relief and awarded appellant

only $105 in damages. Though he does not necessarily challenge the trial court's findings, appellant does object to the conclusions drawn from those findings. We affirm.

## FACTS

Appellant is the owner of the Northwest Quarter of the Northeast Quarter and the Northeast Quarter of the Northeast Quarter, section 33, Township 106 North, Range 25 West, Blue Earth County, Minnesota. Old County Ditch No. 5 ran diagonally through his property from southwest to northeast and exited the property through a large box culvert running under the highway abutting the eastern border of the property. The drainage of appellant's land into this ditch consisted mainly of run-off from other parts of his property. In addition, overflow from a pond in the southwest portion of the property ran into the old ditch. Appellant had tile draining part of his property. This tile originated on neighboring property. It is unclear from the testimony exactly where the tile runs, but it appears to run into appellant's pond and not directly into the old ditch. The water from the tile would run into the old ditch as part of the overflow from the pond.

In 1979, appellant, together with neighboring property owners, petitioned respondent for the improvement of County Ditch No. 5. Viewers assessed benefits and damages to lands through which the ditch ran and the Blue Earth County Board confirmed the assessments. Appellant appealed the Board's action to the district court. The case was settled by stipulation between the parties, and the stipulation formed the basis for judgment entered April 29, 1982.

The stipulated judgment provided that if the appellant did not sell his land to the Department of Natural Resources, as was contemplated at the time, he could exercise one of two options. Under paragraph 2(a) of the stipulation, appellant could pay $8,000 to the county and be included in the ditch system. Under paragraph 2(b), he could choose not to pay the assessment and

give up his right to obtain any drainage into the newly constructed ditch. It was further stipulated, in paragraph 3, that in constructing the ditch across the appellant's property, the contractors would (1) place the dirt excavated from the newly constructed ditch on the north side of the ditch, (2) create a driveway from the county road on the east side of the appellant's property to the dike to be constructed so that the appellant could drive on the dike, and (3) not interfere with the existing drainage under the bridge abutting appellant's property on County–State Road No. 14. The dirt was to be piled on the north side of the ditch to prevent water from the property to the south of the appellant's from flooding appellant's land.

The newly constructed County Ditch No. 5 enters appellant's property along the lines of the old ditch but then makes a 90 degree turn to the right and runs to the eastern boundary of appellant's property. In accordance with the stipulation, dirt removed from the new ditch was piled on the north side of the ditch to create a dike. (The $105 damages award to appellant was based upon the court's finding that some of the dirt had been piled on the south side of the ditch in violation of the agreement. Appellant had expended $105 to level out this dirt.)

There is a berm between the dike and the ditch. The construction contract called for the berm to be two feet wide. According to the measurements of Richard Bradshaw, the engineer who oversaw the construction of the ditch, the average width of the dike and berm combined is ten feet. There is no dike on the south side of the ditch. Appellant claims that the dike is too wide and takes up more property than was originally contemplated. He sought an order from the court compelling respondent to move the entire dike closer to the ditch.

Originally, the construction plans called for the new ditch to follow the lines of the old ditch all the way through appellant's property. Fearing that this would cause a pond on his property to be drained, appellant requested that the county modify the construction plans to curve the ditch and

run it west to east through the southern portion of his property. Bradshaw agreed to this change and restaked the lines of the new ditch. A pilot ditch was dug along the lines as restaked by Bradshaw. However, after the pilot ditch was dug, Bradshaw realized that the ditch would sever access to the northwest corner of the property directly to the south of appellant's property. In order to avoid this, Bradshaw restaked the ditch, moving it back toward the line of the old ditch. The new ditch was finally constructed as restaked by Bradshaw. However, in the area where the pilot ditch was dug, what has been referred to alternately as a shelf, a double ditch or a ledge was left. The area through which the shelf ran consisted mainly of untillable marsh.

Both parties agreed that under the terms of the construction contract, the double ditch was to have been filled in by the county. Both agree that this was not done. Bradshaw testified that this area was not filled in because the appellant had planted trees along the old ditch, making it either difficult or impossible for the crews to fill in this area. Bradshaw also testified that he had discussed this matter extensively with the appellant, and that the two men agreed that the county would try to fill the shelf created by the trial ditch with dirt appellant planned to remove from his pond. Appellant apparently did not provide this dirt as planned and the shelf was never filled.

The construction of the new ditch included placing a fifteen inch culvert on the west end of the old ditch. Bradshaw testified that this was done to prevent erosion of the ditch. Appellant claims that this culvert restricted the drainage to the box culvert that existed at the time the stipulation was signed. The result, according to appellant, is that water backs up on his property and causes substantial damage to his crops.

At one point, appellant petitioned the county board for permission to tile into the old ditch. This petition was denied. The county refused to let appellant gain any additional drainage without paying $8,000 to join the new ditch system. Appellant claims that under the stipulation, he retained the right to tile into the old ditch. He testified that he was told both by Richard Bradshaw and by Lester Anderson, a Blue Earth county commissioner, that under the stipulation he was only prohibited from tiling directly into the new ditch and that he was free to tile into the old ditch. Appellant testified regarding the conversation he alleges took place between him and Anderson:

> [Anderson] indicated that whatever existing drainage that I had at that time I still maintain. Anything less than putting a pipe directly into the new ditch or pumping anything into the new ditch is exactly what he told me.

The trial court nevertheless restrained the appellant from tiling into the old ditch.

## ISSUES

1. Did the trial court err in issuing an order restraining appellant from tiling into the old ditch?

2. Did the trial court err in failing to grant injunctive relief ordering respondent to fill in the area of the double ditch and to reduce the amount of land taken by the dike on the north side of the ditch?

3. Did the trial court err in failing to grant appellant damages for losses incurred as a result of flooding on appellant's land?

## ANALYSIS

■ The issues raised by appellant all involve factual determinations. The authority to make such determinations is one particularly in the domain of the trial court and, as such, should not be disturbed unless clearly erroneous. Minn.R.Civ.P. 52.-01; *Duininck Bros. & Gilchrist v. Brandondale Chaska Corp.,* 311 Minn. 291, 248 N.W.2d 743 (1976); *Enviro–Fab, Inc. v. Blandin Paper Company,* 349 N.W.2d 842 (Minn.Ct.App.1984).

### I.

Appellant cites as error the court's order restraining him from tiling into the old

county ditch. Under paragraph 2(b) of the stipulation, the appellant was not entitled to obtain any drainage into the new system without paying the $8,000 assessment. In finding 13, the court stated:

> That at the time the parties entered into the stipulation, [appellant] had no tile running into the old ditch and the old ditch drained surface water from the [appellant's] land and [respondent's] agreement not to interfere with existing drainage under the bridge abutting [appellant's] property on County–State Road No. 14 is based upon drainage as it existed at that time, that is, with no tile running into the old ditch.

The court found, in finding 14, that if appellant was allowed to tile his property into the old ditch, he would be obtaining a benefit that he has not previously had without paying for it. Thus the court restrained the appellant from any future attempts to tile into the old ditch or the new ditch, as such drainage would be in violation of paragraph 2(b) of the stipulation agreement.

Appellant claims that finding 13 is clearly erroneous and that he has the right to tile into the old ditch. In support of his claim that there was sub-surface drainage into the old ditch at the time that the stipulation was signed, he points to his own testimony in which he refers to a tile system in place prior to the stipulation agreement. He also points to his testimony regarding the conversation he had with Richard Bradshaw, and the conversation he alleges took place with Lester Anderson.

While there may have been tile running across appellant's land, from appellant's own testimony it appears that he did not have tile draining sub-surface water directly into the old ditch system. Rather, the tile ran to a pond on appellant's property. Respondent presented testimony, through Bradshaw, that prior to the construction of the new ditch, the appellant's only drainage into the old ditch was surface run-off. While Bradshaw admitted that he may have told appellant that he could tile into the old ditch, he later testified that he had no authority to speak for the county when he made that statement, and that he also told appellant that he would have to clear such action with the county board before it could be done. Anderson testified that he did not remember ever telling appellant that he could drain into the old system. He stated that at all times it was the position of the county that appellant could not add any tile without paying the $8,000 assessment.

Bradshaw testified that appellant would not be getting the benefit of the new ditch just by tiling into the old ditch because there is a five foot difference in elevation between the old ditch and the new ditch. However, it is clear that any water drained into the old ditch would ultimately run into the new ditch on the other side of County Road 14. Thus appellant would be getting the benefit of the new ditch without paying for it. This is specifically prohibited under paragraph 2(b) of the parties' stipulation. Respondent questions why appellant would be going to the expense of adding tile to his property if he knew he was not going to be benefited by such a project. We believe that the clear answer to this question is that appellant would, in fact, benefit from such a project and he would be receiving this benefit without paying his share of the expenses incurred in constructing the ditch. Under such facts, the trial court's order enjoining appellant from adding tile to his property was not clearly erroneous.

**II.**

The next issue raised by appellant is whether the trial court abused its discretion by refusing to compel respondent to (a) fill in the area of the double ditch and (b) move the dike along the north edge of the ditch closer to the new ditch. In finding 8, the trial court found:

> [t]hat [appellant] agreed to provide fill from the cleanout of a pond for the purpose of filling all or part of the double ditch or ledge and failed to do so; that [appellant] planted trees adjacent to the area making it difficult to fill; and that the property, being approximately .05 acre has no value.

Thus, the court denied appellant's request to compel respondent to fill in the ditch or

compensate appellant for the loss of this land. The court's action is directly supported by the testimony of Richard Bradshaw. He stated that he had measured the area and found it to be between 13 and 17 feet wide and 210 feet long which computes to .05 acres. Bradshaw stated that he told appellant that the trees appellant had planted made it impossible to get fill into the area of the shelf. The two agreed that appellant would provide fill dirt from the pond and that the county would try to push this dirt into the ditch. Bradshaw testified that appellant never provided the fill, and therefore respondent was unable to repair the area. He also testified that the area around the double ditch had been "marshy land and flaris grass."

Appellant agreed that he had planted trees around the area of the double ditch. He also testified that the area of the double ditch had been marshy prior to the construction of the ditch and that now it was better suited for tilling. Relying on his own testimony, however, appellant argues that since the trees did not interfere with his ability to till around the area of the double ditch, he felt a truck could have backed in and dumped dirt.

Though somewhat conflicting, the testimony before the trial court does support the court's finding no. 8. Therefore, the trial court's refusal to force the respondent to fill the ditch was not clearly erroneous.

In finding 10, the trial court stated that, as a result of the stipulation between the parties,

dirt was cast on the North side of the ditch instead of both sides as would otherwise have taken place, and [appellant] gained the use of as much land on the South side of the ditch as he lost by casting additional dirt on the North side of the ditch.

Bradshaw testified that the stipulation called for dirt to be piled only on the north side of the ditch, that normally the dirt would be cast on both sides, that the entire area of the ditch including the berm and dike was 1.28 acres, and that the appellant had been compensated for "an acre plus." Appellant agreed that normally the ditch would have dirt piled on both sides. He also agreed that he had been paid for approximately one and one quarter acres. However, he disagreed with the fact that the land lost from piling the dirt all to one side was equal to what he would have lost had the dirt been placed on both sides according to standard practice.

Bradshaw's testimony supports the trial court's finding that appellant did not lose any more land as a result of the dike being built on the north side than he would have had the dirt been thrown to both sides. Therefore, the court's refusal to force the respondent to push the dike back towards the new ditch was not clearly erroneous.

### III.

Appellant cites as error the trial court's refusal to grant him $3,600 in damages for losses allegedly incurred as a result of flooding of the appellant's land. Appellant claims that this flooding was caused by the fifteen inch culvert that was placed at the edge of the new ditch. In finding 11, the court stated:

That in constructing the new ditch on the East side of the old culvert a 15 inch tile from the culvert to the new ditch system was installed; that said 15 inch tile is adequate to take care of the drainage as it existed when the stipulation was entered into and does not interfere with drainage as it existed under the bridge abutting [appellant's] property on County State Road No. 14; that the [respondent] did previously agree to remove said tile if [appellant] wished to have it removed but [appellant] told the [respondent] to leave it installed.

In finding 12, the court stated:

That although evidence was presented to show backup of water on [appellant's] land over a three year period, causing some crop loss, the evidence did show that the backup was caused, at least in part, by overflow from [appellant's] pond and no evidence was presented to show that the backup exceeded that which took place prior to the time the stipulation was entered into and signed.

Appellant's own testimony supports the finding that the backup was caused at least in part by overflow from the pond. Appellant stated that both the back water coming through the bridge and the overflow from the pond have been contributing to the losses. He also admitted that this overflow of the pond is the result of his and his neighbor's tiling into the pond. (Bradshaw agreed that the overflow from the pond could cause the backup of water on the appellant's property.) Appellant also admitted that despite the backup of water in the spring, he still had good crops and that he actually had benefited from the new ditch. In fact, the evidence shows that appellant's land benefited substantially in that water from the property to the south of appellant's land no longer flooded his land as a result of the new ditch construction.

Bradshaw testified about the conversation he had with the appellant in which he offered to remove the fifteen inch culvert.

I asked Mr. Wingen if you want that culvert out, we'll take it out. * * * As I remember it, he said, no, leave it in for now and that's all I remember.

Appellant admitted that this conversation took place but did not say whether or not Bradshaw had offered to remove the fifteen inch culvert.

Lester Anderson testified that the fifteen inch culvert provided an adequate outlet for the old ditch. He further testified:

Well, that new construction, what it done, kept any of that surface water from going on Mr. Wingen from the south going across [appellant's] land, the drainage coming down the ditch system itself has been diverted from going down the old system and runs around to the side so that water that was running through that shallow ditch and was seeping out into all the adjoining land. That water is diverted so that doesn't do that any more.

In other words, it was Anderson's contention that, contrary to appellant's claim that the new ditch resulted in more water flooding appellant's land, there was actually less water as a result of the new ditch.

As with the first two issues raised by appellant, the question of whether appellant was entitled to damages for crop loss was a factual one. There was ample testimony to support the trial court's action, and it cannot be said that the refusal to award damages was clearly erroneous.

## DECISION

The factual determinations made by the trial court are firmly supported in the record.

Affirmed.